[S. F. No. 1371. Department One.—March 13, 1900.]

## DANIEL DONOVAN, Appellant, v. JOHN W. FERRIS, Respondent.

MASTER AND SERVANT—INJURY TO SERVANT FROM BLASTING—NEGLIGENCE OF FELLOW-SERVANT—FAILURE OF FOREMAN TO GIVE WARNING.—A foreman employed in a stone quarry, whose duty it was to give warning to servants engaged in preparing a blast in one tunnel in a stone quarry, to come out before other blasts prepared in other tunnels were fired, and whose neglect to give the usual warning caused injury to servants so engaged, is a fellow-servant of those injured, under the rule fixed by section 1970 of the Code of Civil Procedure; and the master who was not negligent in the employment of the foreman is not responsible for his neglect to give the usual warning.

ID.—DUTY OF MASTER TO GIVE WARNING—EMPLOYMENT OF COMPETENT SERVANT—VICE-PRINCIPAL.—It is not the duty of a master to give personal warning of danger to persons employed in the business of blasting, and the employment of a competent servant to give them needed warning ends the responsibility of the master. Such a competent servant is not a vice-principal, but a fellow-servant of those to be warned by him, and the question of whether he is a vice-principal should not be left to the jury.

ID.—VIOLATION OF MUNICIPAL ORDINANCE NOT SHOWN.—Where there is nothing in the record to show that the blasts which caused the injury used a quantity of powder in violation of a municipal ordinance, the question of the effect of such violation cannot be considered.

ID.—EVIDENCE—CONTROL OF FOREMAN BY SUPERINTENDENT—CROSS-EXAMINATION.—Where the foreman was called as a witness for the plaintiff, and had testified in his direct examination that he was employed by the superintendent, and was under his direction, the allowance of a question by the defendant on cross-examination as to whether the superintendent did or did not have control and authority to direct him, is not erroneous, and if so, would be harmless, as calling for a conclusion which necessarily follows from the testimony in chief.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. S. K. Dougherty, Judge, presiding.

The facts are stated in the opinion.

Reddy, Campbell & Metson, for Appellant.

The master's duty to give his servants a safe place in which to work was violated in this case. (*Donnelly v. San Francisco Bridge Co.*, 117 Cal. 417, 423, 424; *McNamara v. MacDonough*, 102 Cal. 575; *Mullin v. California Horseshoe Co.*, 105 Cal. 77; *Higgins v. Williams*, 114 Cal. 176; *Elledge v. National City Ry. Co.*, 100 Cal. 282; 38 Am. St. Rep. 290; *Hanley v. California Bridge etc. Co.*, 127 Cal. 232.) It is the legal duty of the master to give the servant warning of any extraneous and unusual danger to which he may be subjected. (*Elledge v. National City Ry. Co., supra; Nixon v. Selby etc. Co.*, 102 Cal. 458.) It was the duty of the master to provide regulations for the safety and protection of the employees and to provide for their enforcement. (7 Am. & Eng. Ency. of Law, 832; 14 Am. & Eng. Ency. of Law, 907, 908; *Elledge v. National City Ry. Co., supra; Chicago etc. R. R. Co. v. Taylor*, 69 Ill. 461; 18 Am. Rep. 626; *Lake Shore etc. R. R. Co. v. Lavalley*, 36 Ohio St. 221; *Haynes v. East Tennessee R. R. Co.*, 3 Cold. 222; *Evansville etc. R. R. Co. v. Holcomb*, 9 Ind. App. 198.) The whole matter of giving warning, and the mode and regulations concerning it, and the matter of assigning workmen to their places being left wholly to Howes, the foreman, he was, as matter of law, the representative of the defendant on those subjects, as vice-principal. (*Nixon v. Selby etc. Co., supra; Elledge v. National City Ry. Co., supra; McMahon v. Ida Min. Co.*, 101 Wis. 102; *Cherokee etc. Min. Co. v. Britton*, 3 Kan. App. 292; *Indiana Car Co. v. Parker*, 100 Ind. 182; *Wheeler v. Wason Co.*, 135 Mass. 294; McKinney on Fellow-servants, secs. 39, 40; *Moore v. Wabash etc. Ry. Co.*, 85 Mo. 588; *Evansville etc. Ry. Co. v. Holcomb, supra.*) The powder used was of greater strength than ordinary gunpowder, and the use of two thousand pounds of powder of greater strength than ordinary gunpowder was a violation of the ordinance and permit, and was negligence *per se.* (*McKune v. Santa Clara etc. Co.*, 110 Cal. 480; *Gulf etc. Ry. Co. v. Pendery*, 14 Tex. Civ. App. 60.)

Van Ness & Redman, for Respondent.

It was not the personal duty of the employer to give the warning to employees of recurring danger from repeated blasts, and when he employed a capable servant to give such warning his

duty was done, and he is not responsible for the particular negligence of such servant. (*McLean v. Blue Point Min. Co.*, 51 Cal. 255; *Hermann v. Port Blakely Mill Co.*, 71 Fed. Rep. 853; *Martin v. Atchison etc. R. R. Co.*, 166 U. S. 399.) The foreman was a fellow-servant of the plaintiff, and the defendant is not responsible for his negligence. (See cases cited *supra*, and *McDonald v. Hazeltine*, 53 Cal. 36; *Brown v. Central Pac. R. R. Co.*, 68 Cal. 171, 176; *Brown v. Sennett*, 68 Cal. 225, 228; 58 Am. Rep. 8; *Stephens v. Doe*, 73 Cal. 26, 28; *Fagundes v. Central Pac. R. R. Co.*, 79 Cal. 97, 99; *Congrave v. Southern Pac. R. R. Co.*, 88 Cal. 360, 365; *Trewatha v. Buchanan etc. Co.*, 96 Cal. 494, 499; *Daves v. Southern Pac. Co.*, 98 Cal. 19; 35 Am. St. Rep. 133; *Stevens v. San Francisco etc. R. R. Co.*, 100 Cal. 554, 566; *Livingston v. Kodiak Pkg. Co.*, 103 Cal. 258, 264.)

COOPER, C.—Action to recover damages for personal injuries. After the plaintiff introduced his evidence, a nonsuit was granted and judgment accordingly entered. This appeal is from the judgment and from an order denying the defendant's motion for a new trial. The evidence shows the facts to be substantially as follows: The defendant was the owner of a stone quarry in the city and county of San Francisco, in which he had been for several months carrying on the business of blasting. In this business he employed a large number of laborers and a superintendent, but the blasting operations were carried on under the direct supervision of one Howes as foreman. On the morning of the 30th of November, 1895, the plaintiff was, and for several months prior thereto had been, in the employ of defendant as a laborer in the quarry, under the directions of said Howes as foreman. Three parallel tunnels had been driven from the face of the quarry into the hill fifty or sixty feet apart, and a distance of about thirty feet. These tunnels were designated at the trial as tunnels No. 1, No. 2, and No. 3. Tunnels No. 2 and No. 3 had each been charged with several hundred pounds of Judson powder, preparatory to setting off a blast, and were ready to fire on said morning. For several days immediately preceding the plaintiff had been working in tunnel No. 1, and that morning had been directed by Howes, the foreman, to drive a cross-cut from the inner end of the tunnel to make a

pocket for powder. He entered the tunnel with three other men and began work about 7 o'clock A. M. Blasting was the business in which plaintiff was employed, and for which defendant hired him. A great many blasts had been fired during the time plaintiff was so employed. The foreman, Howes, had always on previous occasions given the men in the tunnels sufficient warning. He would call to them, "Going to fire, get out." The men in the tunnels, prior to this time, were always given plenty of time to get out. The tunnel in which they were working was a safe place in which to work except during the time of firing blasts in the other tunnels. One Davidson was the superintendent of defendant, and as such superintendent employed Howes, who, as foreman, had full charge of the blasting. Howes usually gave a general order to all the men to get out of the tunnels during the time a blast was being fired. He sometimes would go personally, and sometimes he would send others and warn the men to get out. This system of warning had always been found efficient prior to the day of the injury to plaintiff. When plaintiff entered the tunnel he was required by Howes to continue work until called out, and had no means of knowing when a blast was to be fired unless warned by some one. Howes knew that plaintiff and the three other men were in the tunnel, and told some one to see that they were out before the blast was fired. Howes thought they had been warned to get out, and gave the order to fire without knowing whether they had been called out or not. He could see the mouth of the tunnel from where he stood, but did not look to see if the men had left the tunnel. It was the rule and custom, established by Howes, to know that warning had been given and heard, and time allowed to reach a place of safety before giving the order to fire the blast. When the order to fire was given, both tunnels No. 2 and No. 3 were exploded simultaneously, and by the force of the explosion the seams in the rock lying between tunnels Nos. 1 and 2 were opened to such an extent that the gases caused by the explosion of the powder passed through said seams and fissures into tunnel No. 1. The force of the explosion caused the rock and loose earth lying around the mouth of the tunnel to fall in and close it, thus preventing the gases from escaping and

the fresh air from entering, in consequence of which, before the mouth of the tunnel could be opened, one man had died and the other three were taken out insensible. One of those died shortly afterward but plaintiff and one Link recovered. The plaintiff was injured, confined to his bed for several days, and has incurred expenses for doctor's bills and care. It is plain from the foregoing statement of facts that the plaintiff has been damaged and that his damage has been caused by negligence. It is also apparent that the negligence consisted in the failure of Howes to give warning to plaintiff to leave the tunnel in which he was at work before the blast was fired. It is not claimed that the plaintiff was in any way at fault. He knew the dangerous nature of the business in which he was employed, and relied upon Howes to notify him before firing the blast. There is no claim made that defendant did not use proper care in the selection of Howes as foreman, neither is it claimed that he was unfit or incompetent for the business in which he was engaged. It will be necessary, then, to determine from these facts whether or not the defendant is liable. Was Howes a fellow-servant of plaintiff? Thompson on Negligence, volume 2, page 1026, after discussing the cases, says the great weight of authority is: "That all who serve the same master, work under the same control, derive authority and compensation from the same common source, and are engaged in the same general business, though it may be in different grades or departments of it, are fellow-servants who take the risk of each other's negligence." The same definition is substantially given by Beach on Contributory Negligence, third edition, section 330, page 473. The same definition has, in substance, been laid down by this court in numerous cases. In *Congrave v. Southern Pac. R. R. Co.*, 88 Cal. 368, it is said: "The law of this state respecting this subject, as set forth in the code referred to, recognizes no distinction growing out of the grades of employment of the respective employees; nor does it give any effect to the circumstance that the fellow-servant, through whose negligence the injury came, was the superior of the plaintiff in the general service in which they were in common engaged."

We think that Howes was a fellow-servant of plaintiff under the authorities above cited. He was in the employ of defend-

ant, so was plaintiff.   He was under the supervision of defend-
ant's superintendent, and so was plaintiff.   They were both en-
gaged in the same labor—blasting.   It is urged that Howes was
a vice-principal, and therefore his negligence was the negligence
of defendant.   We do not think the doctrine of vice-principal
can be applied to Howes, or that he was a vice-principal under
the rule as established in this state.   There is much conflict in
the decisions of the highest courts of the different states of the
Union upon this much discussed question.   Within the past
twenty-five years hundreds of opinions have been written upon
it, and as yet no general rule has been adopted.   In this state
the Civil Code, section 1970, lays down this general rule: "An
employer is not bound to indemnify his employee for losses suf-
fered by the latter in consequence of the ordinary risks of the
business in which he is employed, nor in consequence of the
negligence of another person employed by the same employer in
the same general business, unless he has neglected to use ordi-
nary care in the selection of the culpable employee."

In the case of *Congrave v. Southern Pac. R. R. Co., supra,* it
was held, under this section, that a brakeman and a conductor
on a railroad train are persons "employed by the same employer
in the same general business within the meaning of the above
section."   In the opinion it is said: "This section of the code
not only restates the rule first established by judicial decision as
to the injury received through the negligence of a fellow-servant,
but it clears away to a great extent the difficulties which may
have existed as to the meaning of 'fellow-servant.'   It declares
them to be those employed 'in the same general business.'   And
if the employees on a train of cars, including the engineer, the
conductor, the fireman, and the brakeman, are not persons em-
ployed in the same business, it would be difficult to imagine a
set of men who could be considered as so employed."

In *Stephens v. Doe,* 73 Cal. 27, it was held that "the foreman
of a mine and a miner employed to work under his directions
are fellow-servants" within the meaning of said section 1970.

It is claimed that it was the duty of defendant to have warned
the plaintiff when a blast was about to be fired, and that he can-
not escape such duty imposed upon him by claiming that the in-

jury was caused by the negligence of one in his employ. If it were an absolute duty of defendant to have warned plaintiff of the approaching danger, the same as it was his duty to furnish him a safe place in which to work, and safe and proper machinery and appliances, then the rule would apply. But we think the defendant was under no legal duty to give the plaintiff personal warning. He employed a competent man to give such warning, and thus furnished adequate and proper means for the purpose. When he employed a competent person whose duty it was to give the warning his liability ceased. In most cases it would be impracticable for the employer to perform such duty personally. In the case of a corporation it would be impossible. The plaintiff testified that the place in which he was working was safe when no blasts were being fired. That he expected to be notified in time to get out before any firing of a blast. He knew the means employed for the purpose of notifying him and assumed the risk.

Beach, after a review of the legal definitions of negligence, defines it to be "the breach or omission of a legal duty." (Beach on Contributory Negligence, sec. 6.) It is the duty of the employer to furnish the employee suitable machinery and appliances by which the service is to be performed, and to keep them in repair and order; to exercise ordinary care in the selection and retention of sufficient and competent servants to properly conduct the business in which the servant is employed, and to make such provision for the safety of the employees as will reasonably protect them from the dangers incident to their employment. (*Daves v. Southern Pac. Co.,* 98 Cal. 24; 35 Am. St. Rep. 133; *Donnelly v. San Francisco Bridge Co.,* 117 Cal. 423.) In this case the defendant did not omit any legal duty within the definition of the above cases. We think the conclusion we have reached is amply supported by the authorities.

In *McLean v. Blue Point etc. Min. Co.,* 51 Cal. 256, the plaintiff was in the employ of defendant as a laborer in the vicinity of where defendant was blasting rock in a mine. One Kegan was defendant's foreman, and had authority to employ and discharge hands. Plaintiff was injured by a rock thrown from a blast, owing to the negligence of Kegan in not notifying him

that the blast was about to be fired. It was held that the negligence was that of a fellow-servant and that plaintiff could not recover. In *Stephens v. Doe, supra,* the plaintiff had been employed by defendant as a miner, and, under the orders of defendant's foreman, had set off a blast. After the blast had been fired, plaintiff, under orders of the foreman, proceeded to inspect the result of the blast to discover if any ore had been thrown down thereby, and, while in the act of doing this, rocks which had been loosened by the blast fell upon him, crushing the bones of one of his legs and otherwise injuring him. He claimed that the foreman was negligent in ordering him to an unsafe place. It was held that he could not recover, and that the negligence was that of a fellow-servant. In *Daves v. Southern Pac. Co., supra,* it appeared that Daves was engaged in some way with a hand car on a side track, at a place where Bresnahan, the section foreman, had sent him. It was the duty of Bresnahan to close the switch after opening it, so that the train would not run on the sidetrack. He did not do so, and the train ran into the sidetrack and killed Daves. The action was brought by his widow and minor children. It was held that the negligence was that of a fellow-servant, and that plaintiffs could not recover.

In the late case of *Hermann v. Port Blakely Mill Co.,* 71 Fed. Rep. 853, it appeared that the chute led from the wharf to a port in the vessel's side. Defendant was engaged with a gang of men between the decks loading lumber. The pieces of lumber were passed in the chute by another set of men under charge of a foreman. It was the duty of one of the men on the wharf to give a warning cry when a piece of lumber was placed in the chute, in order to enable those below to get out of the way. The place in which the men below were working was safe, provided the warning cry was given. The man to whom the duty of giving the warning cry was intrusted was a competent and proper person. He omitted to give the warning cry when a large piece of lumber was sent down the chute, and plaintiff was struck by it and injured. The learned opinion of the circuit judge reviews the authorities fully, citing many state and federal cases, and holds that the negligence was that of a fellow-servant,

and that plaintiff could not recover. It is needless to multiply authorities, and a few only will be here cited. (*The Harold*, 21 Fed. Rep. 428; *Congrave v. Southern Pac. R. R. Co.*, 88 Cal. 361; *Donnelly v. San Francisco Bridge Co.*, 117 Cal. 419.) We do not think, under the authorities cited, that the question as to whether or not Howes was a vice-principal should have been left to the jury.

It does not appear that the blasts were exploded in violation of any ordinance. Defendant obtained permission of the board of supervisors, after filing a bond and complying with the regulations of the board, "to use two thousand pounds of powder in the blasts to be set off on the property northwest of the Spring Valley Water Works reservoir on Clarendon Heights." It was admitted that the blasts were set off on the property described in the permit. If the ordinance had prohibited the use of more than two thousand pounds in any blast, it would have to appear that more than two thousand pounds was used in such blast. It does not so appear in this case. The plaintiff called Howes as a witness, and after he had testified in chief the defendant's counsel, in cross-examination, asked him this question: Q. As superintendent, did, or did not, Mr. Davidson, have control and authority to direct you? The witness was permitted to answer the question under the plaintiff's objection that it called for a conclusion. The ruling if error, would not be of sufficient importance to justify the reversal of the case; but we do not think it was error. The witness in direct examination had testified that he was employed by the superintendent, and was under the directions of the superintendent. If the plaintiff was employed by the superintendent, the court knew, as a matter of law, without the assistance of the opinion of the witness, that the superintendent had authority to direct him.

We advise that the judgment and order be affirmed.

Haynes, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Garoutte, J., Van Dyke, J., Harrison, J.

Hearing in Bank denied.