## McDONALD et al. v. BUCKLEY.

(Circuit Court of Appeals, Fifth Circuit. May 21, 1901.)

### No. 1,033.

MASTER AND SERVANT—FELLOW SERVANTS—FOREMEN AND MEMBERS OF PILE-DRIVER GANG.

> A general foreman, employed by contractors, and having charge of the work of putting in the foundations for a wharf, and of all employés engaged in the work, with power to employ and discharge, while engaged in the actual work of directing the operations of a pile driver, giving the signals to the engineer for the fall of the hammer, is a fellow servant with the other members of the pile-driver gang; and any negligence committed by him while thus working, resulting in injury to another workman, is his own personal negligence, for which the master is not responsible, where there was no negligence of the master in his selection.[1]

In Error to the Circuit Court of the United States for the Southern District of Florida.

This suit was originally brought in the circuit court for Monroe county, Fla., and was removed by plaintiffs in error to the circuit court of the United States for the Southern district of Florida. It was an action of trespass on the case, brought to recover damages for injuries received by Eugene J. Buckley, defendant in error, while in the employ of the Union Bridge Company. The declaration charges, in substance, that the Union Bridge Company was engaged in the work of erecting and constructing certain wharves, coal sheds, and other work of a similar character in Key West; that none of the firm resided there, nor gave their personal attention or supervision to the work, but had placed one J. C. Griffith in charge and control of the work and of the men engaged thereon; that Buckley was hired through said Griffith, and by him was told to place iron rings on the top of the piles before they were driven; that on the 18th of July, 1898, Buckley was sent by Griffith to place a ring over the top of a pile, and while in the act of placing it, and

---

[1] Who are fellow servants, see notes to Railroad Co. v. Smith, 8 C. C. A. 668; Railway Co. v. Johnston, 9 C. C. A. 596; Flippin v. Kimball, 31 C. C. A. 286.

before he had time to place the ring, Griffith negligently, without plaintiff's knowledge, and through no neglect or fault of plaintiff, gave the signal to drop the hammer of the pile driver; that the hammer was dropped on Buckley's right hand, whereby he lost four fingers and the use of the hand for life. The declaration further charged and averred defective and negligent equipment, rig, and appliances. The plaintiff was a cigar maker, depended on that vocation for his support and that of his family, and claimed damages in the sum of $15,000. The defendants pleaded: First, not guilty; second, that the injury was caused by negligence of the plaintiff, and not otherwise; third, that it was caused by contributory negligence of the plaintiff. Upon these issues the case went to trial, and resulted in a judgment and verdict in favor of plaintiff for $7,500. After a vain effort to obtain a new trial, the defendants in the lower court sued out a writ of error to this court. On the trial of the case, the plaintiff, among other matters, testified as follows: "On the 18th of July, I was in the employ of the Union Bridge Co. Mr. Griffith, the foreman, employed me. By Mr. Griffith I mean the gentleman who was just on the witness stand. On the Saturday morning before I was hurt, at about nine o'clock, I went to Mr. Griffith, and asked him if he could give me a job. He asked me what I could do. I said, 'Anything you tell me.' He said, 'All right; go to work.' I asked him what did he pay the men. He said $1.50 and $2.00 a day. I said, 'Mr. Griffith, I won't work for a dollar and a half a day.' He said, 'All right; if you are worth two dollars a day, I will give it to you.' I went to work on Saturday morning at about nine o'clock. I did not know who hired and discharged the men. Mr. Griffith told me what work to perform. On Monday, July 18, 1898, we were engaged in pulling up a pile we had put down Saturday evening. We were so engaged all day until about five o'clock. After the piles had been gotten up, we were engaged in clearing away the two piles, and about ten or fifteen minutes after that Mr. Griffith sent me over to the south foundation for a 6-inch ring, and when I got back with it they were driving piles. There was a great deal of confusion, and everybody seemed excited, and, as I arrived with the ring, Mr. Griffith, the foreman, called out, 'Damn it, ring that pile,' and I went on the platform of the pile, driver to put the ring on the pile, and as I was putting the ring on the pile he let the hammer drop. He gave the signal for the hammer to drop, and my hand was mashed, and I had to go home." Griffith testified as follows: "Mr. Sheridan was up in the leads, and in putting this pile in the old hole where we had pulled the other one out it went two platforms below his platform,—about 16 feet. That necessitated for Mr. Sheridan to come down, or for somebody to go up from the bottom. It was handier for some one to go up from the bottom than for him to come down, and I spoke out, 'Somebody put a ring on that pile.' Buckley looked up, and understood what I meant, picked up a ring, and went up and put it on the pile. Q. Please state what took place after you say Buckley picked up the ring, and went up and put it on the pile. A. After the hammer had hit the pile, he threw the ring on the pile, and about two-thirds of it went on the pile, and about one-third was off the pile. He grabbed hold of the ring with his right hand to jerk the ring back into proper position, and the hammer came down, and caught his hand. Q. How many times had he attempted to put this ring on the pile when he got hurt? A. He was making the second attempt. Q. Was the hammer up when he put the ring on the pile the first time? A. It was going up. Q. Did you give the signal to drop the hammer at that time? A. No, sir." The evidence was undisputed that Griffith was the foreman of the pile-driver gang of seven men, including himself; that, while he directed the operations of the men, he also worked with them in performing the work, at least so far as to give the signals directing the engineer in using the hammer; that the Union Bridge Company were contractors engaged in the construction of iron and foundation work, with a place of business in New York; that they sent out a general foreman for each job, and a general manager for each contract; that, while W. S. McDonald was the manager of the Key West work, and also of the Tortugas work, there was a general foreman in charge of the work at Tortugas by the name of Moorman, and another general foreman in charge of the work at Key West, who was

Griffith himself. After the testimony was in, and before the jury retired, the defendants requested the court, among other charges, to charge the jury as follows: "The defendants' attorney requests the court to instruct the jury to find a verdict for the defendants." This request was refused, and exception duly taken. The said defendants then requested the court to instruct the jury as follows: "If the injury was the result of any carelessness of the foreman, Griffith, while he was engaged in the work of the pile driving, he was a fellow servant, and defendants cannot be held responsible,"— which requested charge was refused, and the refusal duly excepted to. The charge given by the court, as found in the record, instructed the jury, in substance, among other matters, that, if the plaintiff was injured through the negligence of the foreman, Griffith, in charge of the pile-driving work, he was entitled to recover, and in no wise instructed the jury that the foreman was in any sense a fellow servant of the plaintiff.

G. Bowne Patterson and J. P. Blair, for plaintiff in error.

E. B. Kruttschnitt, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

After stating the facts as above, the opinion of the court was delivered by PARDEE, Circuit Judge.

There are seven assignments of error, but we find it unnecessary to consider any but the third, to the effect that the court erred in refusing to instruct the jury to find a verdict for the defendants, and the seventh, which complains of the refusal of the court to instruct the jury that, if the injury was the result of any carelessness of the foreman, Griffith, while he was engaged in the work of pile driving, he was a fellow servant, and defendants cannot be held responsible. There was no evidence tending to show that the master did not furnish safe and proper machinery and appliances, nor that the master did not use due and proper care in the selection of competent employés. On the facts given, as in the above statement, and taking the evidence in the most favorable light for the plaintiff, the case presented is one where a foreman who had the power to select, employ, and discharge, and who had the direction of the work to be performed, and who was at the time engaged with the plaintiff and others in carrying on the operations, was guilty of negligence in directing the work, which negligence resulted in injury to the plaintiff; and the question presented for decision is whether, under these circumstances, the foreman and the plaintiff were fellow servants. In the much-considered leading case of Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, there is a full discussion of the fellow-servant doctrine, and therein a locomotive engineer, who had charge of his engine, and directed its operations, was held to be a fellow servant with a fireman on the same locomotive, who was subject to his orders, and generally under his direction. The principles declared in the Baugh Case are restated and approved in Railroad Co. v. Keegan, 160 U. S. 259, 263, 16 Sup. Ct. 269, 270, 40 L. Ed. 418, 421, as follows:

"We held in Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, that an engineer and fireman of a locomotive engine running alone on a railroad without any train attached, when engaged on such duty, were fellow servants of the railroad company; hence that the fireman was precluded from recovering damages from the company for injuries caused, during the running, by the negligence of the engineer. In that case it was de-

clared that: 'Prima facie, all who enter the employment of a single master are engaged in a common service, and are fellow servants. * * * All enter in the service of the same master to further his interests in the one enterprise.' And while we in that case recognized that the heads of separate and distinct departments of a diversified business, under certain circumstances, be considered, with respect to employés under them, vice principals or representatives of the master as fully and as completely as if the entire business of the master was by him placed under the charge of one superintendent, we declined to affirm that each separate piece of work was a distinct department, and made the one having control of that piece of work a vice principal or representative of the master. It was further declared that 'the danger from the negligence of one specially in charge of the particular work is as obvious and as great as from that of those who are simply co-workers with him in it. Each is equally with the other an ordinary risk of the employment,' which the employé assumes when entering upon the employment, whether the risk be obvious or not. It was laid down that the rightful test to determine whether the negligence complained of was an ordinary risk of the employment was whether the negligent act constituted a breach of positive duty owing by the master,—such as that of taking fair and reasonable precautions to surround his employés with fit and careful co-workers, and the furnishing to such employés of a reasonably safe place to work, and reasonably safe tools or machinery with which to do the work; thus making the question of liability of an employer for an injury to his employé turn rather on the character of the alleged negligent act than on the relations of the employés to each other, so that, if the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but, if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is liable therefor."

And the application of these principles resulted in holding that the foreman of the night gang in the service of a railroad company, who had direction of the operations,—that is, the coupling of cars and movement of the same,—was a fellow servant with the members of the force employed under him.

Railroad Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994:

"H. was a foreman of an extra gang of laborers for plaintiff in error on its road, and as such had charge of and superintended the gang in putting in ties and assisting in keeping in repair three sections of the road. He had power to hire and discharge the hands (13 in number) in the gang, and had exclusive charge of their direction and management in all matters connected with their employment. The defendant in error was one of that gang, hired by H. and subject, as a laborer, while on duty with the gang, to his authority. While on such duty, the defendant in error suffered serious injury through the alleged negligence of H., acting as foreman in the course of his employment, and sued the railroad company to recover damages for those injuries. Held, that H. was not such a superintendent of a separate department, nor in control of such a distinct branch of the work of the company, as would be necessary to render it liable to a co-employé for his neglect; but that he was a fellow workman in fact as well as in law, whose negligence entailed no such liability on the company as was sought to be enforced in this action."

In Martin v. Railroad Co., 166 U. S. 399, 17 Sup. Ct. 603, 41 L. Ed. 1051, the points decided, as reported in the syllabus, are as follows:

"The plaintiff in error was in the employment of the defendant in error as a common laborer. While on a hand car on the road, proceeding to his place of work, he was run into by a train, and seriously injured. It was claimed that the collision was caused by carelessness and negligence on the part of other employés of the company,—road master, foreman of the gang

of laborers, conductors, etc. Held, that the co-employés whose negligence was alleged to have caused the injury were fellow servants of the plaintiff, and hence that the defendant was not liable for the injuries caused by that negligence."

See, also, Mining Co. v. Whelan, 168 U. S. 86, 89, 18 Sup. Ct. 40, 42 L. Ed. 390.

In Railroad Co. v. Conroy, 175 U. S. 323, 20 Sup. Ct. 85, 44 L. Ed. 181, there is an exhaustive review of decisions and opinions involving the question of who are fellow servants, and the principles declared in the Baugh Case, and followed since then by the supreme court, were commended and reaffirmed.

Considering and applying the rules laid down by the supreme court in the cases above mentioned, we are constrained to hold in the instant case that, although Griffith was the foreman, and had charge and direction of the operations of the pile driver and of all the employés in the pile-driver gang, with the power to employ and discharge, yet, while engaged in actual work of operating the pile driver, giving the signals to the engineer for the fall of the hammer, he was a fellow servant with the other members of the gang, and that any negligence committed by him while thus working was his own personal negligence, for which his masters are not responsible. It follows that the third and seventh assignments of error are well taken, and that the trial court erred in refusing the instructions therein referred to. The judgment of the circuit court is reversed, and the cause is remanded, with instructions to grant a new trial.