(March 24, 1916.)

ADOLPH J. WIESNER, Respondent, v. BONNERS FERRY LUMBER COMPANY, a Corporation, Appellant.

[160 Pac. 647.]

PERSONAL INJURIES—MASTER AND SERVANT—HAZARDOUS BUSINESS—ASSUMPTION OF RISK—WARNING SIGNALS—DUTY TO GIVE—DELEGATION OF—NEGLIGENCE.

1. Where servants are employed for the prosecution of a lawful but hazardous business, they assume the risks of such employment arising from the negligence of coemployees, subject, however, to the exception that the master is liable for such injuries as accrue to the servant from the negligence of a fellow-servant in the selection of whom the master has been culpably negligent. But when the master exercises ordinary care, having regard to the hazards of the service, to provide the servant with a reasonably safe working place, machinery, tools and appliances and to maintain them in a reasonably safe condition of repair, and adopts adequate and efficient rules and regulations, and uses reasonable care to enforce such rules and regulations by employing fit and competent servants devolving upon them the positive duty to carry out and enforce the rules for the protection of the workmen—the failure of the servant to give a signal under such circumstances, in an isolated instance, which results in an injury to a fellow-servant, is in no sense the negligence

of the master for which he would be liable, but is the carelessness and negligence of a coservant in the same common employment.

2. The legal measure of the master's duty or liability is the exercise of ordinary care, having regard to the hazards of the service, to provide the servant with reasonably safe working places, machinery and appliances, and the exercise of ordinary care to maintain them in a reasonably safe condition of repair, and use due diligence in the employment of competent servants to whom may be intrusted the duty of giving proper signals which is part of the work of operation; and it is not the master's fault if such servant fails to give such proper signals and as a consequence injury results to a fellow-servant.

3. *Held,* under the facts in this case, that where the master used due diligence in the selection of a competent servant to give warning signals and adopted a reasonably safe signal system and used reasonable care to see that the signal system was enforced, his nondelegable duties were complied with, and he could not be held answerable in damages for injuries to a servant caused by the negligence of a fellow-servant in failing to give the proper signal.

4. The case of *Lucey v. Stack-Gibbs Lumber Co.,* 23 Ida. 628, 131 Pac. 897, 46 L. R. A., N. S., 86, followed and approved, except wherein it is held that it is the absolute duty of the master to give warning signals, and the failure to do so, though the failure be the neglect of an employee, renders the master liable to a servant who is injured in consequence of such neglect, and that the duty to give proper signals is nondelegable—and to that extent it is hereby overruled.

5. *Held,* that the court erred in giving instruction No. 6 and in refusing to give appellant's requested instruction "B."

[As to how far servant may rely on knowledge of master concerning risks, see note in 24 Am. St. 320.]

APPEAL from the District Court of the Eighth Judicial District for Bonner County. Hon. John M. Flynn, Judge.

Action to recover for personal injuries. Judgment for plaintiff. *Reversed.*

Cannon & Ferris and H. H. Taylor, for Appellant.

The theory of the law of master and servant is not that the master is an insurer of the safety of the place where the servant works, or the appliance furnished, but, on the contrary,

the master has performed his full duty toward the servant when he has used reasonable care to furnish a reasonably safe place and reasonably safe appliances, and used reasonable care to keep them reasonably safe. (*Armour Co. v. Russell,* 144 Fed. 614, 75 C. C. A. 416, 6 L. R. A., N. S., 602; *Alaska Mining Co. v. Whelan,* 168 U. S. 86, 18 Sup. Ct. 40, 42 L. ed. 390; *City of Minneapolis v. Lundeen,* 58 Fed. 525, 7 C. C. A. 344; *Donovan v. Ferris,* 128 Cal. 48, 79 Am. St. 25, 60 Pac. 519.)

"Frequent attempts have been made to bring the negligence of servants deputed to give signals within the scope of the principle that the duty to maintain a safe place of work is nondelegable. But this contention is rejected (except in Washington, where a servant who has been designated to give signals which control the movements of machinery, is while so acting, held to be doing the work of the master)." (4 Labatt, Master & Servant, 2d ed., 1537; *Grady v. Southern Ry. Co.,* 92 Fed. 491, 34 C. C. A. 494; *Donnelly v. San Francisco Bridge Co.,* 117 Cal. 417, 49 Pac. 559; *Northern Pac. Ry. v. Charless,* 162 U. S. 359, 16 Sup. Ct. 848, 40 L. ed. 999; *American Bridge Co. v. Seeds,* 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A., N. S., 1041; *Maine etc. Corp. v. Hachey,* 173 Fed. 784, 97 C. C. A. 508; *McDonald v. Buckley,* 109 Fed. 290, 48 C. C. A. 372.)

The evidence of Stewart was not rebuttal evidence, and the court erred in admitting it over appellant's objection. Respondent having testified himself as to what the rule was and that they did not at any time notify him that there was going to be a blast, he is bound by his own testimony, and could not dispute himself by the deposition of Stewart. (*Stearns v. Chicago etc. Ry.,* 166 Iowa, 566, 148 N. W. 128; *Holmes v. Leadbetter,* 95 Mo. App. 419, 69 S. W. 23; *Feary v. Metropolitan Ry.,* 162 Mo. 75, 62 S. W. 452; *Virginia etc. Co. v. Godsey,* 117 Va. 167, 83 S. E. 1072; *California etc. Works v. Finck,* 47 Fed. 583; *Durham v. Carbon etc. Co.,* 22 Kan. 232; *Coit v. Waples,* 1 Minn. 134; *Atwater v. Edwards etc. Co.,* 147 Mo. App. 436, 126 S. W. 823; *Shea v. Seelig,* 89 Mo. App. 146.)

John P. Gray and Allen P. Asher, for Respondent.

This court has definitely and deliberately adopted the doctrine that the duty to warn is the nondelegable duty of the master, and that negligence in the giving of warning or in the failure to warn where it is necessary is not the negligence of a fellow-servant, but the negligence of the master. (*Lucey v. Stack-Gibbs Lbr. Co.*, 23 Ida. 628, 131 Pac. 897, 46 L. R. A., N. S., 86; *Potlatch Lbr. Co. v. Anderson,* 199 Fed. 742, 118 C. C. A. 180; *Cunningham v. Adna Mill Co.,* 71 Wash. 111, 127 Pac. 850; *Belleville Stone Co. v. Mooney,* 61 N. J. L. 253, 39 Atl. 764, 39 L. R. A. 834; *Ondis v. Great Atlantic & Pacific Tea Co.*, 82 N. J. L. 511, 81 Atl. 856, 46 L. R. A., N. S., 777; *Koerner v. St. Louis Car Co.,* 209 Mo. 141, 107 S. W. 481, 17 L. R. A., N. S., 292; *Kempfert v. Gas Traction Co.,* 120 Minn. 90, 139 N. W. 145; *Elenduck v. Crookston Lbr. Co.,* 121 Minn. 53, 140 N. W. 125.)

The decision in the Lucey case is in harmony with the modern principles which the courts all over the land are adopting and enforcing, and is supported by the many cases cited in the opinion, and has at least once since that time been favorably cited. (*Browning v. Smiley-Lampert Lbr. Co.,* 68 Or. 502, 137 Pac. 777–781. Also approved in *Barter v. Stewart Min. Co.,* 24 Ida. 542, 135 Pac. 68.)

The rules relating to the order of introducing evidence are for the most part mere rules of practice; they are under the control of the court and subject to be varied in the exercise of a sound judicial discretion; so that a departure from the ordinary rules or a refusal to grant indulgence to a party cannot be made a ground of error. (5 Jones on Evidence, p. 67; *Barkley v. Copland,* 74 Cal. 1, 5 Am. St. 413, 15 Pac. 308, 310; *Mutual Life Ins. Co. v. Thomson,* 94 Ky. 253, 22 S. W. 87; *Devonshire v. Peters,* 104 Mich. 501, 63 N. W. 973; *Willard v. Pettitt,* 153 Ill. 663, 39 N. E. 991; *Hart v. United States,* 84 Fed. 799, 28 C. C. A. 612; *Blewett v. Gaynor,* 77 Wis. 378, 46 N. W. 547; *Baer v. State,* 59 Neb. 655, 81 N. W. 856.)

BUDGE, J.—This is an action to recover for personal injuries alleged to have been sustained by respondent while in the employ of the appellant. The cause was tried by the court with a jury, which resulted in a verdict and judgment in favor of the respondent for the sum of $12,000.

The facts, briefly stated, are: The respondent was employed by the appellant corporation to assist in the construction of a logging roadway. While so engaged he received the injuries complained of, which were caused by the explosion of dynamite used by his coemployees in blowing out stumps along the roadway under construction. At the time respondent received these injuries he was assisting in the sawing of trees lying along this roadway, for the purpose of facilitating their removal. A gang of his fellow-workmen had preceded him and was removing the brush, and another gang, engaged in the blowing out of the stumps, was following at some distance.

It is charged in the complaint that no proper warning or notice was given respondent immediately prior to the discharge or explosion of the dynamite which resulted in his being struck by quantities of wood or other hard substances, causing his injuries; that the discharge of such a large quantity of explosive in the vicinity of where respondent was employed constituted a new and increased danger at the time and place where he was working of which he had no knowledge, and changed the dangers and risks of the place where he was working without his knowledge and without warning to him; that it was the duty of appellant to give him warning that such explosive would be set off and discharged in the vicinity of where he was working, so that he could have an opportunity of saving himself from injury; that appellant was negligent in permitting said explosive to be discharged near where respondent was working without giving him warning of the danger he was in, and that by the exercise of reasonable care on the part of appellant, such warning could have been given and respondent could have escaped; and that appellant did not adopt any rules or regulations for the conduct of its business so as to afford reasonable or any

protection to respondent, or that if it did adopt any such rules, it did not use reasonable care to see that they were enforced or complied with. The complaint also sets out the earning capacity of respondent, the nature and result of the alleged injury, the age of respondent, his life expectancy, and the invalidity of the settlement in satisfaction of the injury.

Appellant assigns and relies for a reversal of this case upon eleven specifications of error, but for convenience discusses all of these assignments under the following subdivisions, and in our determination of this case we will, as far as necessary, pursue this order of discussion:

First: Appellant is not liable for the alleged negligence of the powderman in failing to give the usual warning signal.

Second: The evidence establishes conclusively that appellant used reasonable care to enforce the giving of the warning signal.

Third: The court erred in admitting the deposition of Stewart.

Fourth: A new trial must be granted because the birth record was false in a material part.

Fifth: The verdict is excessive in view of respondent's prior condition.

It is first contended that the record shows conclusively that appellant had adopted a reasonably safe method of conducting its blasting operations; that reasonable care had been used to enforce such blasting methods; that the man in charge of the blasting was a thoroughly competent man, with years of experience in that class of work; and that the court instructed the jury that this powderman was competent. Whether or not the powderman gave the warning signal is a disputed fact, but it is contended by appellant that even if there was no evidence that it was in fact given, the case should not have been submitted to the jury, for the reason that the negligence of the powderman in failing to give the signal would not in law be the negligence of the master. In other words, the master having furnished a competent servant to give the signals, having adopted a reasonably safe signal system, and having used reasonable care to see that

the signal system was enforced, its nondelegable duties were complied with, and the giving of the signal was a mere detail of the work which could be delegated to a competent servant.

Counsel for appellant in support of their contention that appellant is not liable for the alleged negligence of the powderman in failing to give the usual warning signal cite the case of *Armour Co. v. Russell,* 144 Fed. 614, 75 C. C. A. 416, 6 L. R. A., N. S., 602. This was an action by a servant against his master for damages for negligence in the construction and maintenance of elevators and shaft in which they operated. At the close of the evidence counsel for defendant requested the court to instruct the jury that all that was required of the master was that it should have exercised ordinary care to provide reasonably safe and suitable elevators and appliances for the use of its servant. The court denied this request, and charged the jury that it was the duty of the defendant to furnish the plaintiff a reasonably safe place in which to work, reasonably safe tools, implements or appliances with which to do his work, and to keep them in a reasonably safe condition of repair during the service. On appeal the court said: "But actionable negligence is nothing but a breach of the duty to exercise reasonable care. It is not a breach of a guaranty of the character of place or of appliances. If a duty to provide a reasonably safe place or reasonably safe appliances were imposed upon the master, he would become in effect a guarantor of their reasonable safety, because his failure in any respect to make and keep them reasonably safe would be a breach of that duty and would cast him in damages, however great were his watchfulness and diligence. This is not the legal measure of the master's duty or liability. The limit of his duty is to exercise ordinary care, having regard to the hazards of the service, to provide the servant with reasonably safe working places, machinery, tools and appliances, and to exercise ordinary care to maintain them in a reasonably safe condition of repair." (See other cases cited therein.)

The case of *Maine & N. H. Granite Corp. v. Hachey,* 173 Fed. 784, 97 C. C. A. 508, is directly in point with the case at bar.   In that case Hachey was employed by the Granite Corporation in its quarry.   He was engaged in breaking up waste rock, or "grout," beside a large pile of grout about 30 feet in height.   Pieces of waste rock were deposited upon this grout pile from time to time by a derrick.   The danger from falling stones was such as to require that the men working at or near the grout pile should receive a warning whenever rock was to be dropped from the derrick upon the slanting grout pile.   The derrick was operated by machinery, and was in charge of a boss derrickman, whose duty it was to see that the stones were properly raised, swung and deposited upon the grout pile, to give proper signals to the engineer, and also to give warning to the workmen in the vicinity of the grout pile in time to enable them to go to a place of safety while stones were dropped upon the pile. The boss derrickman usually had one or two men under him as helpers.   It was agreed that it was the duty of the boss derrickman to give timely warnings, either personally or by sending one of his helpers to do it.   The warning was given by shouting, or at times by rolling a small stone near the men at the foot of the pile.   The men working at or near the grout pile were accustomed to rely upon receiving a signal before the dumping of rock.   The pile of grout obstructed the view of the derrick, and the attention of the men at work breaking up rock was so engaged that the giving of signals to them was required as a regular accompaniment of the operation of the derrick.   It was customary for the derrickman to give the signals personally or through one of his helpers.   Upon the record in that case it was assumed that the boss derrickman was guilty of negligence in dropping a heavy stone on the grout pile without giving warning. The stone slid and fell upon Hachey, inflicting serious injury. Hachey was without fault in the matter.   The Granite Corporation, plaintiff in error, conceded the negligence of the boss derrickman, but contended that his failure to give warning of the movement of the derrick and of the dropping of

stone was a negligent performance of the duties of a fellow-servant of Hachey. The defendant in error, however, contended that under the circumstances the master, in order to make the place at the side of the grout pile a reasonably safe working place, was bound to give warning, and that the person employed to give warning was performing a part of the master's nondelegable duty. The court, among other things, said: "The general proposition that it is the duty of the master to give warning is not to be so extended as to require him to give in person or to insure the giving by others of all those special signals or shouts which are so associated with the work of operation as to become part of it. The employment of different men in different parts of the general work requires, under many circumstances, the giving of signals as an accompaniment of the work itself, in order that there may be co-operation.,in the movement of the men. The giving of such signals is a part of the work of operation. Such signals are rather the giving of information of what one workman is about to do, in order that his fellow-workmen may have knowledge of it and conduct themselves accordingly, than the giving of orders which are to be considered as the orders of a master. (*Standard Oil Co. v. Anderson,* 212 U. S. 216–226, 29 Sup. Ct. 252, 53 L. ed. 480.) The master·may intrust to a competent servant the work of shouting or otherwise signaling when he is about to hoist or to lower away, and it is not the master's fault if such a servant fails to inform his fellow-servants of the movement of the machine under his charge."

In *Alaska Treadwell Gold Min.· Co. v. Whelan,* 168 U. S. 86, 18 Sup. Ct. 40, 42 L. ed. 390, the supreme court of the United States had before it a case where the plaintiff was working at the top of a chute, breaking rock fine enough so it would go through the chute. At the bottom of the chute was a gate which was closed, and which was not opened until the foreman had notified the men to that effect. On the occasion when plaintiff was injured it was claimed by plaintiff that the chute was opened without giving him warning. It was contended that the failure to warn the plaintiff was the

negligence of the master. The court held that the negligence of Finley, the foreman, was the negligence of a fellow-servant, and in its opinion said: "Finley was not a vice-principal nor a representative of the corporation. He was not the general manager of its business, or the superintendent of any department of that business. But he was merely the foreman or boss of the particular gang of men to which the plaintiff belonged. Whether he had or had not the authority to engage and discharge the men under him is immaterial. Even if he had such authority, he was none the less a fellow-servant with them, employed in the same department of business, and under a common head. There was no evidence that he was an unsuitable person for his place, or that the machinery was imperfect or defective for its purpose. The negligence, if any, was his own negligence in using the machinery or in giving orders to the men."

In the case of *City of Minneapolis v. Lundin,* 58 Fed. 525, 7 C. C. A. 344, the plaintiff was injured through the omission of the foreman to inform him that a dynamite cartridge had failed to explode. The court held that this negligence was the negligence of a fellow-servant, and in its opinion said: "It was the absolute duty of the master to use reasonable care to employ ordinarily careful and suitable servants. . . . . It was the duty of the master to use reasonable care and diligence to furnish a safe place for the defendant in error to perform his service in. . . . . But the duty of the master to furnish a safe place for the performance of work does not require it to keep that place safe under the constantly changing conditions which the performance of such a work as the construction of a sewer necessitates. The city furnished a street in which it was safe to construct a sewer. The comparative safety of the place where each man worked was necessarily constantly varied by the progress of the work, and the duty of the master did not extend to keeping every place where each workman labored safe at every moment of its progress. It was the duty of each workman to use reasonable care to so render his service that the place in which he and his fellow-servants were required to labor

should continue to be reasonably safe. It was the duty of the foreman to so direct the work of the excavating, of laying the pipe, and of filling the trench that it would continue to be reasonably safe for every man in his crew to render the service assigned to him. But these were personal duties imposed upon the workmen and the foreman by their employment in the common service, and not by the delegation to them of the performance of any absolute duty of the master. The street originally furnished by the city was safe. The trench in which the rock was to be blasted was originally safe for the blasting of rock. If the safe place originally furnished by the city became unsafe in the progress of the work, it was rendered so not by any negligence of the city or its superintendent in furnishing it, but by the acts or negligence of the foreman and his workmen in discharging the duties imposed upon them by their common employment, and for these acts and this negligence the city was not responsible. Each employee assumed the risk of this negligence of his fellow-servants when he entered the common employment. (*Armour v. Hahn*, 111 U. S. 313, 4 Sup. Ct. 433, 28 L. ed. 440; *Bunt v. Mining Co.*, 138 U. S. 483, 11 Sup. Ct. 464, 34 L. ed. 103; *Killea v. Faxon*, 125 Mass. 485.)''

In the case of *Donovan v. Ferris*, 128 Cal. 48, 79 Am. St. 25, 60 Pac. 519, the facts are similar in many respects to those in the case at bar. There, the supreme court of California held that the negligence of a foreman in failing to notify plaintiff that a blast was about to be fired was the negligence of a fellow-servant and plaintiff could not recover. In that case it was contended by counsel for plaintiff that it was the absolute duty of defendant to warn plaintiff of the approaching danger, the same as it was his duty to furnish him a safe place in which to work and safe and proper machinery and appliances. The court held that the defendant was under no legal duty to give the plaintiff personal warning, but that it was his legal duty to employ a competent servant to give such warning, and when he had employed a conpetent servant to give the warning his liability ceased. This conclusion was based upon the theory that in most cases it

would be impracticable for the employer to perform such duty personally.

In the case at bar it will be conceded that the master did not personally give the warning, and it must also be conceded that the master provided a competent servant for that purpose, and that respondent knew the means employed by appellant for the purpose of notifying him of the explosions of dynamite, and he assumed the risk incident to such employment. That the system followed by appellant of having the warning given the workmen by calling "fire" had always been carried out and had proved efficient during all the time respondent was in appellant's employ prior to the date of the accident, we think was clearly established by the evidence.

But the theory of respondent is that, by reason of the fact that the warning was not given upon the occasion of the accident, the appellant is liable in damages, irrespective of the fact that it exercised ordinary care, having regard to the hazard of the service, in providing a reasonably safe place and reasonably safe appliance for the performance of the work, in the selection of a competent servant to perform the duty of giving the warning, and had adopted a proper system of rules and regulations with positive instructions that every precaution be taken in order to avoid accident; in short, if the servant failed to give the warning, the appellant company under no circumstances could escape liability.

This, we think, is carrying the rule a step too far. The enforcement of such a principle, in view of the rapid development of this state and the great number of men employed, would be detrimental to the employee as well as the employer. There must be some reasonable limitation placed upon both the employer and the employee, in the matter of fixing the liability of the former for negligence and the assumption of risk by the latter.

In the case of *Hermann v. Port Blakely Mill Co.*, 71 Fed. 853, which was cited by the court in the case of *Donovan v. Ferris, supra,* it appeared that a chute led from the wharf to a port in the vessel's side. Plaintiff was engaged with

a gang of men between the decks loading lumber. Pieces of lumber were being passed in the chute by another set of men under the charge of a foreman. It was the duty of one of the men on the wharf to give a warning cry when a piece of lumber was placed in the chute, in order to enable those below to get out of the way. The place in which the men below were working was safe provided the warning cry was given. The man to whom the duty of giving the warning cry was intrusted was a competent and proper person. He omitted to give the warning cry when a large piece of lumber was sent down the chute, and plaintiff was struck by it and injured. The learned opinion of the circuit judge reviews the authorities fully, citing many state and federal cases, and holds that the negligence was that of a fellow-servant, and that plaintiff could not recover.

In Labatt's Master and Servant, vol. 4, 2d ed., sec. 1537, the rule announced by that author is as follows:

"Frequent attempts have been made to bring the negligence of servants deputed to give signals within the scope of the principle that the duty to maintain a safe place of work is nondelegable. But this contention is rejected [except in Washington, where a servant who has been designated to give signals which control the movements of machinery, is, while so acting, held to be doing the work of the master]."
The author in a footnote to sec. 1537, *supra,* cites a great many decisions of various state and federal courts sustaining the rule laid down there. He evidently overlooked the cases of *Belleville Stone Co. v. Mooney,* 61 N. J. L. 253, 39 Atl. 764, 39 L. R. A. 834, and *Ondis' Admx. v. Great A. & P. Tea Co.,* 82 N. J. L. 511, 81 Atl. 856, 46 L. R. A., N. S., 777, both of which cases, as we understand them, announce the same rule as has been established in the state of Washington. The supreme courts of Minnesota and Wisconsin also adhere to that rule. (See *Anderson v. Pittsburgh Coal Co.,* 108 Minn. 455, 122 N. W. 794, 26 L. R. A., N. S., 624, and note; *Burke v. Ash,* 120 Minn. 388, 139 N. W. 705, 44 L. R. A., N. S., 609; *Elenduck v. Crookston Lumber Co.,* 121 Minn. 53, 140 N. W. 125; *Gussart v. Greenleaf Stone Co.,* 134 Wis.

418, 114 N. W. 799.) However, several of these cases have been decided since Labatt's Master and Servant, 2d ed., was prepared for the press.

In addition to the foregoing authorities, counsel for appellant cite in their brief the cases of *Grady v. Southern Ry. Co.*, 92 Fed. 491, 34 C. C. A. 494; *Donnelly v. San Francisco Bridge Co.*, 117 Cal. 417, 49 Pac. 559; *Northern Pac. Ry. v. Charless*, 162 U. S. 359, 16 Sup. Ct. 848, 40 L. ed. 999; *American Bridge Co. v. Seeds*, 144 Fed. 605, 75 C. C. A. 407, 11 L. R. A., N. S., 1041; *McDonald v. Buckley*, 109 Fed. 290, 48 C. C. A. 372, in support of their contention.

This court held in *Larsen v. La Doux*, 11 Ida. 49, 81 Pac. 600, that if the act is one pertaining to the duty the master owes to his servant, he is responsible for the manner of its performance by the servant to whom it is intrusted; but if it is one pertaining only to the duty of an operative, the employee is a fellow-servant with his colaborers of whatever his rank, for whose negligence the master is not liable; that, in short the master is liable for the negligence of an employee who represents him in the discharge of his personal duties to his servants, and beyond this he is liable only for his own personal negligence.

By the great weight of authority, the master may intrust to a competent servant the work of giving signals where it is necessary for the safety of the workmen in the operation of the work, and it is not the master's fault if such competent servant fails to give the proper signal. Nor is respondent's contention that the master is an insurer of the sufficiency of the means which he selects for giving signals supported by the preponderance of authority.

Counsel for respondent cite as authority supporting their contention the case of *Lucey v. Stack-Gibbs Lumber Co.*, 23 Ida. 628, 131 Pac. 897, 46 L. R. A., N. S., 86, and insist that this court has definitely and deliberately adopted the doctrine that the duty to warn is the nondelegable duty of the master, and that negligence in the giving of warning or in the failure to warn where it is necessary is not the negligence of the fellow-servant, but of the master.

But the facts in that case are different from those in the case we are now considering. They show that plaintiff Lucey was a powderman and had been engaged in using powder in blowing out stumps in the course of his employment. Upon the occasion of the accident he was directed by the foreman of the lumber company to cease working as a powderman and to go to another place, which was an unsafe place to work, and put in a bridge to be used as a turnout. He and another laborer were working under the immediate direction of the foreman in performing that work, and while he was engaged in that service, deeply engrossed in his work, other workmen felled a tree about twelve inches in diameter and sixty feet long, without giving any warning whatever, and the tree struck plaintiff and broke his leg. Plaintiff was unaware of the fact that the tree was being cut. In the case at bar, respondent was not unaware of the fact that the stumps were being blown. Lucey was struck by a tree sixty feet long and was, therefore, in the immediate vicinity of his fellow-workmen. We think the evidence in the case at bar supports the statement that the respondent was between five and six hundred feet away from the stumps which were being blown out at the time of his injury, and that between him and the stump was one of the men who had been engaged in preparing the stump, blasting, spitting the fuse and attending to the lighting of the same to bring about the explosion of the dynamite. We think, also, that the testimony supports the proposition that a person between three and four hundred feet away from the point of the explosion of dynamite in the quantity and of the quality usually used for blasting stumps would ordinarily be considered safe; and that the injury to respondent was caused by one of those unfortunate and unpreventable accidents.

Another difference between the facts of these two cases is that in the *Lucey v. Stack-Gibbs Lumber Co.* case it is clear the defendant lumber company had not furnished the workmen with a safe place in which to work, and it does not appear that ordinary care had been used in providing a system of warning for the protection of the employees; while

in the case at bar, appellant had used ordinary care in providing a reasonably safe place for its employees to work, and had made efficient rules and regulations for the warning and protection of its workmen, and furnished a competent servant to give signals.

This court in the case of *Lucey v. Stack-Gibbs Lumber Co.,* *supra,* held that it was the duty of the master to furnish a reasonably safe place for the servant to work, and, it is true, further stated that if it required signals to be given to protect a servant from injury from falling trees cut by other servants, it was the master's duty to see that proper signals were given "and if the injury is caused by the failure to give the signals, the master is liable . . . . the authority to a servant to give a signal is nondelegable, and the failure to give it is imputed to the master, and the servant employed to give it is not the fellow-servant of the injured employee so far as the giving or failure to give the signal is concerned." We are of opinion that the holding in that case that "the authority to a servant to give a signal is nondelegable" was, under the circumstances and facts shown by the record, *obiter.* Yet if we concede that it was not *obiter,* as a statement of a general principle of law, it finds no support in the great weight of authority, including numerous cases decided by the supreme court of the United States. And so far as it may be considered as supporting the doctrine that "authority to a servant to give a signal [to a coservant] is nondelegable," it is expressly overruled.

It should not be inferred that the conclusion reached by the court in that case was erroneous, because, under the peculiar conditions disclosed by the record, it is apparent that the court based its decision on the ground that the master had not used ordinary care in furnishing the servant with a reasonably safe place in which to work.

The distinction seems to be drawn by the authorities that if the master furnishes a competent servant to give signals where signals are necessary to protect the workmen, and such servant neglects to give them, the master is not liable. Of course, if it appears that the servant was not competent and

that the signals were to be given in a way, manner or language that could not be understood by the servant, then the master would be liable. But where the servant is competent and the signals are such as would protect the workmen, if given, the master is not an insurer, and not liable if injury results from the servants's failure to give them. In the vast business enterprises carried on throughout the country, it is utterly impossible for the master to be present at all places where signals may be needed to be given, and to hold him liable, after he has adopted proper rules for the giving of signals and has employed a competent servant to give them, would make him an insurer, and the decided weight of authority is against any such rule.

It is next contended by counsel for appellant that the trial court erred in giving instruction No. 6 to the jury, and in refusing to give appellant's requested instruction "B," for the reason that the evidence establishes conclusively that appellant used reasonable care to enforce the giving of the warning signal. In instruction No. 6, the court, among other things, said that appellant adopted such reasonable rules as were required, and then added: "It is for you to say under the evidence whether the defendant exercised reasonable care to see that they were enforced." The giving of the latter part of this instruction, when tested by the evidence, in our opinion, clearly constituted reversible error.

Respondent himself testified with reference to the firing of blasts that it had been the practice while he was there working for the foreman to call out "fire," and the men would then seek a place of safety; that they did not come to him and notify him at any time that there was going to be a blast, and that at the time the accident occurred no warning was given.

The father-in-law of respondent, who was at work with him at the time the injury occurred, testified that prior to the time of the accident there had been blasting around near where they were at work, and when the powdermen lighted a fuse they would call "fire" and the workmen would go to a place of safety, a distance of five or six hundred feet; that

before these powdermen would discharge a blast, they did not go and tell the men that they were going to fire a blast and then go back and light the fuse; that they never came down to tell them anything about the blast—they just shouted "fire."

Witness Holmes testified that they had rules there governing blasting operations; that the rule was to shout "fire" two or three times, ten or fifteen minutes before they would set the fuse afire, in order to let the men get away. After the fuse was fired, one of the powdermen would go one way and one the other, in order to "flag his end, for fear somebody would be coming up."

Witness Hende testified that when he was there he heard the warnings whenever there was blasting, and when the blasting was over, he would hear the cry of "All over," "Come back," or something like that.

Witness Armstrong testified that the powdermen would always have their stumps loaded and the powderman would call three times before he would light a fuse, in order to give the men a chance to get in the clear, and they would count the shots as they went off, and when the last shot was exploded they would shout, "All over."

Witness Koran, one of the powdermen, who was present when the blasts were touched off that did the injury, testified that the other powderman, to let the men know he was going to spit the fuse, would shout "fire" three times, and that witness went one way and the other powderman the other way; that every time before they touched off a blast, they would shout "fire" three times, and after the blasts had gone off they would call "All over."

It will be observed from the foregoing testimony that the signal given before spitting the fuse was to shout "fire," and one of the powdermen would go one way and the other go the other way from the place where the powder was exploded. There is no conflict in the testimony in regard to the giving of signals, as above indicated, by all of the witnesses as well as the respondent himself, except upon the one single occasion when the respondent was injured. The

trial court instructed the jury that the rules adopted by appellant for warning the men were sufficient, and we think the evidence conclusively shows that appellant used reasonable care to enforce the giving of the warning signal, and that the instruction complained of should not have been given or that question submitted to the jury.

We have examined carefully the contention of appellant that the court erred in admitting Stewart's deposition, and, while in view of what has been said we do not deem it necessary to go into a discussion at length on this question, we are of the opinion that, under the facts of this case, the court committed error in admitting this deposition.

The remaining two assignments of error as to the falsity of the birth record and the excessive amount of the verdict are, on account of the conclusions we have reached, unnecessary to be determined.

For the foregoing reasons, the judgment of the trial court should be reversed and a new trial granted, and it is so ordered.    Costs are awarded to appellant.

Sullivan, C. J., and Morgan, J., concur.

(October 24, 1916.)

ON REHEARING.

MORGAN, J.—Both appellant and respondent moved for a rehearing.    Their motions were granted and the case has been again submitted to us for decision.

Counsel for appellant, argues that, in view of our decision heretofore rendered, we should have directed the trial court to dismiss the action.    This contention is based upon a statement in the opinion to the effect that appellant provided a competent servant to give the warning, and that respondent knew the means employed for the purpose of notifying him of the explosions of dynamite and assumed the risk incident to his employment, and upon our decision that, under the facts of this case, where the master used due diligence in

the adoption of a reasonably safe signal system and used reasonable care to see that it was enforced, his nondelegable duties were complied with, and he could not be held answerable in damages for the injury to a servant caused by the negligence of a fellow-servant in failing to give the proper signal.

It is the contention of respondent that the judgment of the trial court should be affirmed. He urges that the evidence shows that during the time he was employed by appellant prior to the date of the accident he had not been working in the immediate vicinity of where blasts were being exploded, but that the powdermen had worked at a distance of about half a mile from him, and that on the day of the injury appellant changed the place of his employment and that of the powdermen, so that he was required to work within a short distance from where the blasts were exploded and within the danger zone; that he was given no notice and was not aware he was working any nearer than half a mile from where the blasting was to be done, and that he did not, therefore, assume the risk to which he was subjected and which resulted in his injury. It is also urged that it was the duty of appellant to warn respondent that it was about to explode a charge of dynamite in close proximity to him, and that this duty was absolute and nondelegable.

Without entering into a further discussion of the law we will say that, upon a careful examination of the authorities cited by the parties, we have reached the conclusion that if respondent was, for several days prior to the accident, continuously employed at work upon the construction of a road so near to others engaged in the same work, who were using dynamite, as to make it necessary to give him signals in order that he might retire to a place of safety when a blast was to be set off, and if appellant had adopted and used reasonable and proper care to enforce a system of signals for his protection and had assigned to proper persons the duty of giving them, the performance of that duty was a detail of the work, and was not nondelegable, and the failure of such persons

to give the warning on the occasion of the accident was not the failure of a vice-principal of appellant but that of a fellow-servant of respondent.

If respondent's contention is well founded in fact, that he had always before the accident been employed at a safe distance from where blasting was done, and that he was removed from there by appellant to a place within the danger zone without any notice to him, or knowledge upon his part, that his new place of employment was near enough to the point where blasts were about to be exploded to render his position hazardous, he cannot be held to have assumed the risk incident to his employment, for he could not assume a risk without the knowledge of its existence.

We do not desire it to be understood that we decide from the record before us that the above stated contention of respondent is or is not well founded in fact. This is a question which should be submitted to a jury, under proper instructions.

We therefore adhere to our former conclusion, and reverse the judgment and remand the cause to the district court, with instructions to grant a new trial.

Sullivan, C. J., and Budge, J., concur.