93    209
94   ²379

93    209
95   ²  51
98   ²561

JAMES KANE, Appellant, v. THE FALK COMPANY,
Respondent.

### Kansas City Court of Appeals, March 3, 1902.

1. **Master and Servant:** NEGLIGENCE: ORDINARY COURSE OF WORK: EVIDENCE. On a review of the evidence, it is held that the usual and ordinary way of moving rails in constructing a railroad track is by hand-power alone or by horse-power alone, and the combination of the two forces is unusual and unsafe and negligent.

2. ———: ———: ———. Whatever is according to the general, usual and ordinary course of work adopted by those in the same business is reasonably safe within the meaning of the law.

3. ———: ———: CONTRIBUTORY NEGLIGENCE: UNUSUAL COURSE OF WORK: JURY. While the combined use of hand and horse-power in moving rails in building a railroad track is unusual and unsafe yet the danger is not so obvious that the court can declare that the servant ordered to work in that way is guilty of contributory negligence; that question should be submitted to the jury.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry,*
.Judge.

REVERSED *(with directions).*

*Latshaw & Latshaw* for appellant.

(1)   Plaintiff contends that when the trial court set aside the verdict of the jury, because "the evidence adduced in the case did not support the verdict," the court in effect said: "A demurrer to the evidence should have been sustained." In that event it is the proper practice for this court to pass upon the propriety of said ruling.   Frank Lee v. Kansas City Gas
Vol 93, app—14.

Company, 91 Mo. App. 612. (2) The proper, ordinary and customary method of moving rails similar to the one in question, was with men and tongs, and not with a combination of men and horses. This fact is established by the testimony. Mason v. Fourteen Mining Company, 82 Mo. App. 367; Beard v. A. Car Co., 72 Mo. App. 583. (3) The plaintiff had a right to presume that said method would continue to be employed, and he did not assume the liability from injuries arising from said new method of procedure. Bradley v. Railroad, 138 Mo. App. 293.

*Harkless, O'Grady & Crysler* for respondent.

(1) Now we submit that the testimony in this case by the plaintiff and his own witnesses showed that the accident happened by reason of the plaintiff getting his foot caught while he was hanging onto the rail. (2) But again, the negligence charged in the petition was predicated above the fact that the defendant ought not to have hitched horses to a rail to move it where the men were working and aiding to move it at the same time. Now on this point, plaintiff Kane undertook to say that he had never seen it done before, but Mr. Dailey seemed to admit that it might be done where they had to move the rail some distance or it was heavy. (3) But let us go a step further and see. It will be borne in mind that neither Kane nor Dailey knew how this accident happened and could not tell; that Maxwell testified that Kane got his foot caught and for that reason was hurt. Now following out this line a little further, the defendant showed by Mr. Fleming that the reason why Kane got hurt and got run over was because he did not hold on to the tongs. (4) But another thing; the defendant showed that this accident happened in the usual and ordinary course of affairs. (5) The rule as we understand it is that it is the right and duty of the judge, if in his opinion the verdict is against the evidence or the

weight of it, to grant a new trial even though there might be some evidence tending to sustain the judgment. Lawson v. Mills, 130 Mo. 170; Dean v. Ins. Co., 65 Mo. App. 209. And the trial court may grant a new trial if it believes that the verdict is not sustained by the evidence, even if in the same case, he would not have been justified in taking the case from the jury. Lockwood v. Ins. Co., 47 Mo. 50.

BROADDUS, J.—The plaintiff's cause of action as alleged is substantially as follows: On April 15, 1900, he was working as a common laborer for the defendant corporation, which at that time was engaged in constructing a part of the Metropolitan Street Railway in Kansas City, Missouri, near the corner of Eighth and Wyandotte streets in said city; that while so engaged as a common laborer for the defendant, with other laborers, and while in the act of assisting other employees of the defendant in moving and placing a large and heavy steel or iron rail, his right foot, ankle and leg, were injured by reason of said rail falling upon his foot, ankle and leg, on account of the negligence of the defendant. The negligence is alleged to have been in the defendant negligently hitching a team of unruly and incompetent horses, unused to the work, to said rail, and then negligently starting said horses without warning to the plaintiff of the intention to do so, by a driver who was incompetent and reckless, thus throwing said rail over and upon plaintiff's foot and crushing it. And it is further alleged that defendant, instead of ordering said rail to be moved by hand, negligently used the combination of horse-power and hand-power in moving said rail. And further that defendant neglected to use proper and ordinary precaution against the turning and falling of said rail upon plaintiff's foot.

The defendant's answer was a general denial and an allegation of contributory negligence upon the part of the plaintiff.

The trial resulted in a verdict for the plaintiff for $1,800, which the court, upon motion of the defendant, set aside on the ground that "the evidence adduced in the cause does not support the verdict." The court also sustained defendant's motion in arrest of judgment, from which action of the court in setting aside said verdict and arresting the judgment, the plaintiff has appealed.

The evidence showed that the usual and ordinary way of moving the rails used in the construction of said work, was by the use of hand-power alone, or by the use of horse-power alone, although there is some evidence to the effect that sometimes they were used together for that purpose. The rails in question were about sixty feet long and weighed over one ton each, and when moved by hand-power, the method for doing so was for about twenty-five men with iron tongs to seize the rail and pull or shove it along to the place intended. The rail in question was larger and heavier than ordinary, and had a curvature. A team of horses were hitched to it by order of the defendant's foreman, but as they were unable to start with it, the said foreman ordered the men to take hold with their tongs and assist the horses. The plaintiff and other laborers obeyed the order, the plaintiff taking his position on the inside of the curve. The combined strength of the men and horses proved sufficient to move the rail, and while it was being thus moved, the rail fell upon plaintiff's foot and crushed it. The witnesses differ somewhat as to how the plaintiff was injured.

For a better understanding of the case, the principal facts of the testimony of the different witnesses are given. The plaintiff's testimony was, that they had carried the rail without the aid of horses, that he never saw before one moved by combining the force of both men and horses, that after the driver, by the order of the foreman, hitched his team to the rail, but as they were unable to move it, upon orders of the foreman, he and the other laborers, took hold (he on the inside of the

curve) of the rail, and after it was moved a short distance, it swung over and caught him and he was dragged by it for about three feet. He stated that he had been working for defendant for about eight months, a part of which time he was engaged in helping to lay rails.

Thomas Daily testified, that he was injured at the same time plaintiff was, by the rail getting on his foot; that the usual and ordinary way of moving these rails was by hand for short distances and by horses for longer distances; that he never saw a rail moved by both men and horses, that they had moved a similar rail from the same place by hand; that the turning of the rail caught himself and plaintiff; that this was caused by changing the direction they had started from a north to a northeast course.

W. C. Maxwell testified that he did not have a hold upon the rail just at the time the accident occurred; that the foreman ordered the men to take hold of the rail and assist the horses, but to let loose when the rail began to move, and to stand back; that when the rail made a swing to the northeast, the curved end at the rear passed over Dailey's foot, and as he looked he saw the foreman motion to the man to come back to the assistance of plaintiff whose foot was then under the rail; and that plaintiff got his foot caught in the street car track and was thrown down. He heard the foreman call to the men to look out and get out of the way.

Michael Mallon testified that he had had long experience as foreman and superintendent of construction in similar work and that he had never known a rail of the kind moved by combining the forces of men and horses.

Patrick Fleming, on the part of the defendant, testified that after the horses, by the help of the men, got the rail started, the men all let loose of the rail and got back from it, then the team of horses stopped a while; that when they started again the driver gave the team a swing, and some one called to the men to look out, at which time the plaintiff started back

and he fell over and the rail ran up on his leg; and that he never saw a rail moved before this one by the combined use of men and horses.

Cornelius Killiher testified that he was the defendant's foreman in charge of the men at work at the time of the acci-- dent to the plaintiff; that when he went to move the curved rail in question, he caused a team of horses to be hitched to it, and, as the team could not pull it, he ordered the men to take hold with their tongs and assist; that they moved the rail in this manner a short distance and then halted; that as the team started again, the curved part of the rail caught against the curbing of the street, or something he could not tell what, which caused it to go over; and that he warned the men when they started to hold on with their tongs, as the rail was crooked and liable to bounce. He stated that when he had rails to move a distance of fifty feet he always moved them by a team of horses, if one was around, and that if there was only one team, and it could not move a rail, the men helped with their tongs, that the object in using the men was to give the horses a start.

M. Hager, the teamster, testified that the men got hold of the rail with their tongs, and in this way it was moved a short distance when the team stopped, then the men took hold again and another start was made, when the rail hit something which caused it to bounce and it got onto plaintiff's foot.

T. P. Norton testified that he was holding the chain that was attached to the doubletrees; that the team of horses could not pull the rail, and the foreman told the men to take hold with their tongs and help, and to hold on, for if it hit anything it was liable to bounce. He gave the order before they started; and when the rail started it struck one of the paving blocks which raised it and slid it over, and in this way it caught the men. He stated that he saw rails moved in the same way previous to the occasion mentioned, but never saw any other foreman but Mr. Killiher do so.

The foregoing contains a summary of the evidence of all the witnesses bearing on the principal point in controversy. The conclusion is inevitable, from the whole testimony, that the defendant's foreman, in the discharge of his duties as such, on the occasion in question, was guilty of negligence, and that thereby the plaintiff received the injuries for which he asks damages. It is alleged in the petition that the defendant, instead of ordering said rail to be moved by hand, negligently used the combination of men and horses. It was shown that the usual and ordinary method of moving rails of the kind, was by hand-power alone, or horse-power alone, and not by a combination of the two forces; and that the two former methods were reasonably safe. And it was further shown that the combined use of men and horses in moving a rail was unsafe, and that it was in this instance the cause of the plaintiff's injury. There was not only evidence tending to prove all this, but it was proved by the greater, and, we might say, by the overwhelming preponderance of the testimony.

Under the rules governing cases of this kind, it was the duty of the employer to furnish appliances that were of ordinary character and reasonably safe. "Whatever is according to the general, usual and ordinary course adopted by those in the same business, is reasonably safe within the meaning of the law. The test is general use." Mason v. Mining Co., 82 Mo. App. l. c. 370; O'Mellia v. Railroad, 115 Mo. 205; Huhn v. Railroad, 92 Mo. 440.

The plaintiff, by his testimony, not only showed that the usual, ordinary and reasonably safe method was to move the rail in question, either by men, or by horses; and that the method adopted by defendant's foreman was not the usual method in use, but that it was unusual and not reasonably safe. The foreman, Killiher, when he ordered the men to assist the horses, knew that it was dangerous, because he stated himself that he warned the men when they started to hold on with their tongs, that the rail was crooked and liable to bounce.

To hold that the defendant was in the exercise of ordinary care under such circumstances, would be doing violence to the plainest principles not only of law, but of right.

But defendant contends that the plaintiff himself was guilty of contributory negligence, for the reason that the danger was apparent, and such being the case he assumed the risk. The plaintiff testified in relation to this matter, that he had never seen a rail moved in this way previously, and that he did not know that it was unsafe. We are not prepared to say that the method in question was so obviously dangerous as to preclude a reasonably prudent person from going on with the work, which is the rule in this State, that would prevent a recovery on the ground of contributory negligence. The mere fact that the defendant resorted to this unusual method of moving the rail in the absence of obvious danger likely to result therefrom, would not bar plaintiff's right of recovery. Flynn v. Neosho, 114 Mo. 567; Cohn v. The City of Kansas, 108 Mo. 387; Bradley v. West, 138 Mo. 293. In such cases it becomes a question for the jury, and in this case the question of plaintiff's right to recover on account of contributory negligence in that respect, was submitted to the jury in more than one instruction, and the finding in the negative is amply supported by the evidence.

We find in the record no ground for setting aside the verdict. The cause is reversed with directions to set aside the judgment of the court sustaining the motion for a new trial and setting aside the verdict, and to set aside the judgment in arrest, and to enter up judgment thereon with six per cent interest from the date of its rendition. All concur.