CHARLES H. BECKMAN, by Next Friend, Respondent, v. ANHEUSER-BUSCH BREWING ASSOCIATION, Appellant.

Kansas City Court of Appeals, March 2, 1903.

1. **Master and Servant: BEST APPLIANCE: METHOD: RISK.** A master is not bound to use the latest and best appliances, but performs his duty when he adopts that which is in general use; he may likewise conduct his business in his own way, and is confined to no particular method; and the servant, knowing the hazard of his employment, waives the right of compensation and assumes the risk.

2. **———: ———: OBVIOUS DEFECT: RISK.** Where a skid was used in rolling barrels from one place to another and its safety and security were as open to the observation of the servant as the master, and its defects such as required no skill to remedy and the hazard is such as usually attends the use of such implement, the servant assumes the risk.

3. ———: ———: ORDINARY MANNER: LIABILITY. Where a skid is secured and used in the usual and ordinary manner, the master is not liable, although it may have been safer to have secured it another way.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

REVERSED.

STATEMENT BY BROADDUS, J.

The plaintiff in this case, Charles H. Beckman, is a young man nineteen years of age, and for more than five years prior to the injuries complained of had worked for the defendant at its place of business at the northeast corner of Twentieth and Walnut streets in Kansas City, Missouri. The defendant during said time carried on the business of bottling and distributing its beer in said city, and maintained, among others, a bottling department. This department was located in one building, and to the east of it, about twenty-five feet across a driveway, was the cooler, another building used in the company's business. The floor of the bottling department was ten or eleven inches above the level of the driveway. Beginning about four years before the injury, the plaintiff had been called upon, from time to time, with other men in the bottling department, to go across the driveway to the cooler and bring over small hogsheads of beer, and at the time of the accident had had long and continuous experience in this work. These hogsheads were about three feet in height and about two feet in diameter at the ends, bulging in the center to about thirty inches. The door in the cooler was opposite the doorway in the bottling department. The cooler door was three feet above the ground, and leading from it was a skid of about ten feet in length, down which the barrels of beer were rolled, thence over and across the driveway and up a small short skid about

four feet long, resting on a stone sill in the doorway into the bottling department, which, as stated, was about ten or eleven inches above the ground. This small skid was a simple appliance and was made of two by six oak lumber, fastened together with two, or as some of the witnesses say, three pieces or cleats underneath, the lower piece being two by six, and the upper piece two by three. The lower end of the skid rested in a small excavation in the ground, made there for the purpose of holding the lower end firm. At the time of plaintiff's injury the skid had been in use about two months, before which time two unfastened boards had been utilized for the purpose; these latter having proved unsatisfactory, they were replaced by the one in controversy here. The method pursued was to allow the barrels to roll down the long skid from the cooling room by their own momentum, each man stepping in behind his own barrel as it reached the ground and continuing across the driveway behind the barrel and guiding it up the short skid in through the door of the bottling room. At the time in question, while plaintiff was guiding a barrel up the short skid, from some cause or other when it got near the top of the skid it rolled back and plaintiff in endeavoring to get out of the way caught his foot under some part of the skid, which caused him to fall; and while he was down the barrel passed over him and injured his leg. It is not very clear just what caused the barrel to fall backward. It must have occurred, however, in one of two ways: either because the plaintiff was not guiding it up the center of the skid, which would cause the skid to tilt and throw the barrel off; or that the skid had been misplaced in some way, which might have also caused both skid and barrel to fall to the ground. The preponderance of the evidence, however, goes to show that the accident occurred as last mentioned. There had been, according to the evidence of plaintiff and two other workmen who did this work almost, if not entirely, to the exclusion of

other workmen, no occurrence of a similar kind with this skid. However, some other witnesses say they saw the skid act similarly on one or two other occasions. But if such was the fact it was unknown to either plaintiff or defendant. The finding and judgment were for the plaintiff.

*Warner, Dean, McLeod & Holden* for appellant.

(1) The defendant was only bound to the exercise of reasonable care to provide an appliance that was reasonably safe. This is fundamental. The defendant was not bound to furnish the safest way, nor to maintain it in the safest known way; nor was it bound to make use of any particular kind of appliance. Minnier v. Railroad, 167 Mo. 99; Steinhauser v. Spraul, 127 Mo. 562; Pavey v. Railroad, 85 Mo. App. 222; Blanton v. Dold, 109 Mo. 64; Hogan v. Railroad, 150 Mo. 48. (2) The servant assumes the risk of injury, not only from the dangers of his employment which are known to him, but also those which are discoverable by the exercise of ordinary care. Nugent v. Milling Co., 131 Mo. 245; Roberts v. Telephone Co., 166 Mo. 370. And this means all dangers the employee would have discovered if ordinarily observant in using the appliance. There was no latent or hidden danger about this skid. Marshall v. Hay Press Co., 69 Mo. App. 260; Watson v. Coal Co., 52 Mo. 366. (3) The plaintiff assumed the risk of using this crude and simple appliance because: (a) He had used it and its predecessor repeatedly for several years. (b) He knew the lower end rested in the ground and that there was no other arrangement for fastening it in place. (c) He knew if he rolled a hogshead too far on one side, it would tip over. (d) In using a simple appliance like this, the 'law will' not hear him say he was ignorant of anything about it. His ordinary observation during the years he used it must, as a matter of law, have made him fully familiar with

it and every danger connected with its use. Marshall v. Hay Press Co., 69 Mo. App. 256; Fugler v. Bothe, 117 Mo. 493; Nugent v. Milling Co., 131 Mo. 245; Marsh v. Chickering, 101 N. Y. 396; D'Arcy v. Railroad, 54 N. Y. Sup. 553; Manley v. Paint Co., 76 Minn. 169; s. c., 78 N. W. 1050. (4) When the employer has performed this duty, any injury resulting to the employee falls within the realm of fortuitous accident or is the result of assumed risk or negligence of the servant himself. Fuchs v. St. Louis, 167 Mo. 620; Fuchs v. St. Louis, 133 Mo. 201; Beasley v. Transfer Co., 148 Mo. 413; Sullivan v. Railroad, 133 Mo. 18; Brewing Ass'n v. Talbott, 141 Mo. 674; Thompson v. Railroad, 140 Mo. 125. (5) In this case, the long continued use of this skid without injury or complaint from plaintiff or any of the men using it and without injury or obvious danger of injury, should exempt defendant from any imputation of negligence. Marshall v. Hay Press Co., 69 Mo. App. 260; Thompson v. Railroad, 140 Mo. 125; Lafflin v. Buffalo, etc., R. C., 106 N. Y. 141; Burke v. Witherbee, 98 N. Y. 562; Stringham v. Hilton, 111 N. Y. 188.

*William J. Morse* for respondent.

Submitted an argument with numerous citations.

BROADDUS, J.—Defendant insists that under the evidence plaintiff was not entitled to recover; and that is the only question presented for our determination. It will be perceived that there can be no complaint as to the sufficiency of the skid itself, but the ground upon which plaintiff seeks to recover is, that it was not properly secured, in which respect defendant failed in its duty to its employees.

A skid is a simple contrivance used for handling heavy articles under many conditions and was especially adapted for the work plaintiff was performing

when he was injured. Every person of ordinary intelligence and observation is familiar with the variety of circumstances under which it is utilized, but it is probably used more often in connection with the loading and unloading of wagons and freight cars than for any other purpose. When thus used it is seldom permanently attached to any object but only placed for the time being and removed when the particular work in progress is completed. The evidence in this case, however, showed that the skid in question was removed at no time, remaining at all times in the same position. Would this difference and its constant employment impose upon defendant to have had it firmly attached to the doorsill or the ground so as to render it immovable? is the question to be settled.

It is a well-established principle that the master is not bound to use the latest and best appliance for the use of his servant but that he has performed his duty when he adopts that which is in general use. Minnier v. Railroad, 167 Mo. 99; Blanton v. Dold, 109 Mo. 64; Steinhauser v. Spraul, 127 Mo. 562. Nor is he bound to adopt any particular method in doing his work, but that he may conduct his business in his own way, and that the servant knowing the hazard of his employment impliedly waives the right to compensation for injuries incidentally resulting therefrom, although a different method of conducting the work would have been less dangerous. Bradley v. Railroad, 138 Mo. 293.

With a skid such as was ordinarily used for such purposes, the defendant, in law, had the right to transfer its barrels of beer from one department of its place of business to the other in the manner detailed by rolling them down one skid and up another; and the hazard, if any, attending this method adopted by the defendant in conducting his business, was one which the plaintiff impliedly assumed in his contract of employment. But it is proper to go further, if possible, and distinguish between what may be regarded as a proper appliance,

the right of defendant to conduct his business in his own manner, and that of the method in which the appliance (the skid) was secured for the safety of the employee. And we believe such a distinction may be properly drawn from the circumstances of the case. And if it was a condition over which the defendant alone had control and the power to correct, perhaps defendant would be liable for a failure to provide against a danger which might be obviated by making secure the appliance. But the skid was a simple appliance used to aid the servant in the performance of the ordinary labor of moving barrels from one place to another, which if not safely placed and secured was a matter as open to the observation of the plaintiff as the defendant; and it was a defect which required no skill to remedy and which could have been effected as readily by the servant as by the master. The facts in this case stand upon a parity to one wherein the master provides for the use of his servant a hoe insecure upon its handle, a condition equally apparent to both and one which the servant can correct as easily and safely as the master. There would be as much reason for holding the master liable in one instance as in the other. The defect was obvious; the hazard was such as usually attended the use of the skid as then placed; and it is an undeniable rule that the servant assumes the risks of such hazard.

But there is another test to be applied, viz.: Was the skid secured in the usual manner? Common observation teaches us that it was. If it was secured and used in the ordinary manner, defendant, under the rule, was not required to do more, although it may have been safer to have secured it in some other way. Mason v. Mining Co., 82 Mo. App. loc. cit. 370; O'Mellia v. Railroad, 115 Mo. 205; Huhn v. Railroad, 92 Mo. 440; Kane v. The Falk Co., 93 Mo. App. 209.

For the reasons given the cause is reversed. All concur.