Points Decided.

---

(January 4, 1918.)

## ROBERT SELHAVER, Respondent, v. DOVER LUMBER COMPANY, a Corporation, Appellant.

[169 Pac. 1169.]

MASTER AND SERVANT—PERSONAL INJURY—DUTY OF THE MASTER—AS-SUMPTION OF RISK.

1. It is the duty of the master to exercise ordinary care, having regard to the hazards of the service, to provide the servant with reasonably safe working places, machinery, tools and appliances, and to exercise ordinary care to maintain them in a reasonably safe condition of repair.

2. In order to render a master liable for failure to instruct an inexperienced servant, it must appear that the injury was the result of the servant's unskilfulness or lack of knowledge.

3. Notwithstanding the defective character of the machinery, an employee assumes the risk of his employment where it is shown that he knew of the defective character of the appliances with which he was working, or that the defects were so patent and obvious that with reasonable attention he should have known of their existence, and that he comprehended the danger incident to their defective condition, or, as a reasonably prudent person, should have comprehended the danger and the risk.

4. Where an employee assumes the duty of keeping the machinery upon which he is working in proper adjustment, a failure on his part so to do is contributory negligence.

5. It is the duty of the employer to place a guard over dangerous machinery, provided it can be done consistently with a reasonably proper and effectual operation of such machinery, or with

---

As to different forms of statement of the general rule with respect to master's duty as to places and appliances furnished to servant, see note in 6 L. R. A., N. S., 602.

On the question of duty of master to instruct and warn servant as to perils of employment as affected by servant's knowledge and experience, see note in 44 L. R. A. 40.

On servant's assumption of risk from latent danger or defect, see note in 17 L. R. A., N. S., 76.

As to contributory negligence as a defense to an action based on a breach of the master's statutory duty, see notes in 42 L. R. A., N. S., 1229; 49 L. R. A., N. S., 526.

the proper and effectual conduct of his business; but a failure upon the part of the employee to make proper use of a guard furnished is contributory negligence.

[As to duty of employer to guard saws, see note in Ann. Cas. 1913C, 125.]

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. Robert N. Dunn, Judge.

Action to recover for personal injuries. Judgment for plaintiff. *Reversed.*

Danson, Williams & Danson, Herman H. Taylor and George D. Lantz, for Appellant.

An operator, who has for several months worked at and about a simple machine and who understands fully the machine and its operation, cannot plead ignorance of the dangers attending its operation. The dangers were obvious and known, or would have been known to a person exercising reasonable care and prudence, which calls for the application of the doctrine of assumed risk. (*Minty v. Union Pac. Ry. Co.,* 2 Ida. 471, 21 Pac. 660, 4 L. R. A. 409; *Drake v. Union Pac. Ry. Co.,* 2 Ida. 487, 21 Pac. 560; *Harvey v. Alturas Gold Min. Co.,* 3 Ida. 510, 31 Pac. 819; *Michael v. Stanley,* 75 Md. 464, 23 Atl. 1094; *Wilson v. Steel-Edge Stamping & Retinning Co.,* 163 Mass. 315, 39 N. E. 1039; *Ladonia Cotton Oil Co. v. Shaw,* 27 Tex. Civ. 65, 65 S. W. 693; *Willis v. Besser-Churchill Co.,* 126 Mich. 659, 86 N. W. 133; *Wiggins v. E. Z. Waist Co.,* 83 Vt. 365, 76 Atl. 36; *Greef v. Brown,* 7 Kan. App. 394, 51 Pac. 926; *Lowcock v. Franklin Paper Co.,* 169 Mass. 313, 47 N. E. 1000; *Guedelhofer v. Ernsting,* 23 Ind. App. 188, 55 N. E. 113; *Crown v. Orr,* 140 N. Y. 450, 35 N. E. 648; *Levey v. Bigelow,* 6 Ind. 677, 34 N. E. 128; *Townsend v. Langles,* 41 Fed. 919; *Cudahy Packing Co. v. Marcan,* 106 Fed. 645, 45 C. C. A. 515, 54 L. R. A. 258.)

The court instructed the jury that appellant was bound to exercise ordinary care to supply reasonably proper and suitable guards for the rip-saw. In the absence of statute

requiring a guard, there is no duty on the part of the master to supply one. (*Lohmeyer v. St. Louis Cordage Co.*, 214 Mo. 685, 113 S. W. 1108; *Greef v. Brown, supra; Guedelhofer v. Ernsting,* 23 Ind. App. 188, 55 N. E. 113; *O'Connor v. Whittall,* 169 Mass. 563, 48 N. E. 844; *Wiley v. Batchelder,* 105 Me. 536, 75 Atl. 47.)

"If the using of that kind of appliances was negligence *per se* on the part of the defendants, as plaintiff claims it was, then for the plaintiff to continue to work with those appliances for a month, during which time the complaint shows he was at work with them, prevents a recovery, as he assumed the risk." (*Knauf v. Dover Lumber Co.*, 20 Ida. 773, 120 Pac. 157; *Goure v. Storey,* 17 Ida. 352, 105 Pac. 794; *Duffey v. Consolidated Block Coal Co.,* 147 Iowa, 225, 124 N. W. 609, 30 L. R. A., N. S., 1067; *William Miller & Sons Co. v. Wayman* (Tex. Civ.), 157 S. W. 197; 1 Labatt, Master and Servant, sec. 57, pp. 146, 147; 26 Cyc. 1225, 1226, 1188 and 1205; *Rippetoe v. Feely,* 20 Ida. 619, 119 Pac. 465.)

Robertson & Miller and G. H. Martin, for Respondent.

The question as to whether the plaintiff was inexperienced, whether he appreciated the dangers incident to the use of the rip-saw in the condition it was in when he was injured, whether he had been warned or instructed as to such dangers, and assumption of risk and contributory negligence, and how to avoid them, are questions for the determination of the jury, unless from the evidence the minds of reasonable men would not disagree as to how the facts should be found. (*Wheeler v. Oregon R. & Nav. Co.*, 16 Ida. 375, 102 Pac. 347; *Fodey v. Northern Pac. Ry. Co.,* 21 Ida. 713, 123 Pac. 835; Thompson on Negligence, sec. 4085; *Maw v. Coast Lumber Co.,* 19 Ida. 396, 114 Pac. 9; *Hinckley v. Horazdowsky,* 133 Ill. 359, 23 Am. St. 618, 24 N. E. 421, 8 L. R. A. 490; *Felton v. Girardy,* 104 Fed. 127, 43 C. C. A. 439; *McMillan Marble Co. v. Black,* 89 Tenn. 118, 14 S. W. 479; *Ziegler v. C. Gotzian & Co.,* 86 Minn. 290, 90 N. W. 387; *Western Union Tel. Co. v. Burgess,* 108 Fed. 26, 47 C. C. A. 168; *Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485.)

"A master who orders his servant into new dangers, with respect to which he is inexperienced, is bound to give him suitable warning or instruction as to those dangers, to the end that he may guard himself against injury from them." (Thompson on Negligence, secs. 4055, 4065.)

It is the positive duty of a master to supply his servant with safe appliances, and he impliedly contracts with him that such appliances are reasonably safe and that there is no other danger in the use thereof than such as are obvious and necessary. (*Knauf v. Dover Lumber Co.*, 20 Ida. 773, 120 Pac. 157; *Tucker v. Palmberg*, 28 Ida. 693, 697, 155 Pac. 981.)

"Where there are latent dangers or hazards incident to an occupation, of which the master knows or ought to know, it is his duty to warn the servant of them fully, and failing to do so, he is liable to him for any injury he might sustain as a consequence of such neglect, and this rule applies where the danger is patent, if, through inexperience or other cause, the servant is incompetent to fully understand and appreciate the nature and extent of the hazard." (*Crawford v. Bonners Ferry Lumber Co.*, 12 Ida. 678, 87 Pac. 998, 10 Ann. Cas. 1; *Chiara v. Stewart Min. Co.*, 24 Ida. 473, 135 Pac. 245; *Jancko v. West Coast Mfg. & Inv. Co.*, 34 Wash. 556, 76 Pac. 78; *Ford v. Bodcaw Lbr. Co.*, 73 Ark. 49, 83 S. W. 346; *Fletcher Bros. Co. v. Hyde*, 36 Ind. App. 916, 75 N. E. 9.)

The obligation of the master to instruct the inexperienced servant as to the dangers and hazards of the employment and the proper methods of obviating them is peremptory, and there is no room for the application of the doctrine as to obvious risks. (*Ryan v. Los Angeles Ice etc. Co.*, 112 Cal. 244, 44 Pac. 471, 32 L. R. A. 524; *Ingerman v. Moore*, 90 Cal. 410, 25 Am. St. 138, 27 Pac. 306; *Jones v. Florence Min. Co.*, 66 Wis. 268, 57 Am. Rep. 269, 28 N. W. 207.)

The tendency of a board which is warped to spring back while it is being sawed by a circular saw is not so obvious that an inexperienced workman must be held, as a matter of law, to take cognizance of it without being warned. (*Wheeler v. Wason Mfg. Co.*, 135 Mass. 294; *Thompson v. State*, 89

Wis. 253, 61 N. W. 565; *Gracia v. Maestri Furniture Mfg. Co.*, 114 La. 371, 38 So. 275.)

It is the duty of the master, where it can be done consistently with the proper operation of the appliance, to guard dangerous machinery like this rip-saw. (Thompson on Neg., 2d ed., secs. 4017, 4018, 4021.)

RICE, J.—This is an action to recover damages for personal injury sustained by the respondent while operating a rip-saw in the mill of appellant. The complaint alleges that the respondent had not had any experience with said saw, or any saw similar thereto, but that notwithstanding said fact the appellant negligently directed him to work in and about said saw without giving him any instructions relative to the proper way in which to feed the same or to protect himself from injury. The complaint also alleges negligence in the appellant, in that the feed-rollers and saw were old, defective and out of repair, and that the saw was not shielded or guarded, and that because of the inexperience of the respondent and the old worn-out and unguarded condition of the said rollers and saw, the left hand of respondent came in contact with the saw, whereby three fingers of his hand were cut off.

The answer denied the material allegations of the complaint, and alleged that the respondent voluntarily assumed the risk of injury, in the manner in which the same was sustained by him, and also that the injuries received by him were the result of his own negligence proximately contributing thereto.

The evidence shows that the respondent was injured on or about September 10, 1914; that he was twenty years of age at the time of the accident; that he had been working in appellant's mill four or five months prior thereto; that he had operated the rip-saw off and on during that time, and had operated it continuously for ten or twelve days prior to the accident; that the lumber he was sawing was known as "cull" lumber; that the same was uneven and did not feed regularly through the feed-rollers, but would at times stop,

at which times it was customary for the respondent to place his hand upon the board and force it toward the saw until the feed-rollers again engaged the lumber and automatically fed the same; that at the time of the accident respondent was ripping a board 2x10—12 ft. long, into pieces 2x4 and 2x6.

The rip-saw was equipped with two feed-rollers, the one behind the saw being a corrugated roller and the one in front of the saw being what was called a spiked feed-roller. The two feed-rollers were so connected that both moved at the same time and at the same rate of speed and so that the two would stop together.

Respondent testified that the saw was not in good working order; that for some days prior to the accident it had been warped, or buckled, to some extent; that the feed-rollers were defective, and that he had known them to be defective ever since he started to work on the saw; that when the lumber would stop feeding the saw would continue to revolve and that the friction of the saw against the lumber would cause it to heat, bend and warp. Respondent is the only witness who testified as to the manner in which the accident occurred. His testimony is as follows:

"I ran the plank up to the saw there, about three feet stuck back from the saw, and I put this hand on it like that and shoved it and when I went to shove it it came along there —jerked and drove the plank up on the guide here and throwed my hand—throwed my hand over onto the spike feed there and that took my hand onto the saw."

In answer to a question propounded by his counsel the respondent stated that the board jumped two feet and that his hand was caught a few seconds after the board jumped. Respondent also testified that he had quit school at the age of seventeen; that he had passed through the eighth grade and was fairly bright in his classes.

Actions of this nature are predicated upon negligence upon the part of the employer, and failure to prove such negligence defeats the action. In the case of *Wiesner v. Bonners Ferry Lumber Co.*, 29 Ida. 526, 160 Pac. 647, L. R. A.

1917C, 328, the court, quoting with approval from the case of *Armour Co. v. Russell,* 144 Fed. 614, 75 C. C. A. 416, 6 L. R. A., N. S., 602, stated the duty resting upon the employer in the following language: "The limit of his duty is to exercise ordinary care, having regard to. the hazards of the service, to provide the servant with reasonably safe working places, machinery, tools and appliances, and to exercise ordinary care to maintain them in a reasonably safe condition of repair."

In this case there was evidence of a defective condition of the machinery to go to the jury under the foregoing rule. Taking respondent's version of the matter, the question of his inexperience becomes unimportant, for the injury in this case was not due to his unskilfulness or his lack of knowledge. (*Arizona Lumber & Timber Co. v. Mooney,* 4 Ariz. 366, 42 Pac. 952.)

Notwithstanding the defective character of the machinery, an employee assumes the risk of his employment where it is shown that he knew of the defective character of the appliances with which he was working, or that the defects were so patent and obvious that with reasonable attention he should have known of their existence, and where he comprehended the danger incident to the defective condition of the machinery, or as a reasonably prudent person should have comprehended the danger and the risk. (2 Bailey on Personal Injuries, 6th ed., secs. 373–376.)

We must take the version of the respondent in this case or we are reduced to mere conjecture. According to his own testimony he had full knowledge of all the defects that were shown to exist.

According to his testimony the injury was caused by the jumping of the plank upon the guide, or the jumping of the board forward for a distance of about two feet, or by the combination of the two circumstances. It was shown that if the feed-rollers were properly adjusted, it would be impossible for the board to jump upon the guide. The respondent testified that he knew how to adjust the feed-rollers; that he had a wrench for that purpose, and that he

adjusted them as often as they needed adjustment. He thus assumed the duty of keeping them properly adjusted. He also testified that the back roller had been loose and out of adjustment for two or three days prior to the accident, and also that he knew before the injury occurred that the front or spiked roller was loose. Under such circumstances, in so far as the injury was due to the jumping of the board upon the guide, it was the result of his own negligence in not keeping the feed-rollers properly adjusted.

As to the circumstance of the board jumping forward a matter of two feet, it was shown that the saw was circular, fourteen inches in diameter and somewhat worn; that it extended above the table between three and four inches, and that the motion of that portion of the saw above the table was toward the operator. It is evident that the entire force applied by the revolving saw tended to push the board back toward the operator. When the feed-rollers engaged the board, it would move forward with the speed of the roller and at no greater speed. If the board jumped forward about two feet, as testified to by the respondent, it must have been due to the force applied by the respondent himself. Respondent knew that the revolving saw was dangerous and that his hand would be cut if it came in contact therewith. He also knew that the spiked feed-roller would draw his hand into the saw in case he permitted his hand to become engaged by the roller. To apply force enough to a board to cause it to jump forward against a revolving saw, in view of the obvious danger of such action, would be contributory negligence on the part of any person of ordinary intelligence.

Respondent testified, however, that he had been told by the foreman that when the board stopped and the saw, because of the motion, became heated and caused the lumber to smoke, not to leave the board in that position but to push it on through, and that he was obeying the instruction given by the foreman. He further testified, however, that on some former occasions when he could not push the board through, he had stopped the machine. As to the amount of

force which he applied before he determined that the board could not be pushed through, we may form some estimate by reason of the fact that on this occasion he applied force enough to cause the board to jump forward a matter of two feet. Under this theory of the case, having undertaken an employment attended with such obvious danger, any reasonably intelligent person must be held to have assumed the risk of the employment. (*Bradley v. Chicago etc. Ry. Co.,* 138 Mo. 293, 39 S. W. 763; *Beckman v. Anheuser Busch Brewing Assn.,* 98 Mo. App. 555, 72 S. W. 710.)

"The principle of assumed risk rests upon the ground that it is an implied contract between the employer and the employee that the employee shall assume the risk of all danger obviously incident to his employment. (See *Bauer v. American Car & Foundry Co.,* 132 Mich. 537, 94 N. W. 9.) The employee assumes the risk of all dangers obviously incident to his employment, whether the employer is negligent or free from negligence in exposing him to those dangers. If the employer is not negligent in exposing the employee to those dangers, he is not liable for any injury resulting, for two reasons: (a) He himself is free from negligence; and (b) the employee has assumed the risk. When, however, the injury to the employee results from an assumed risk to which an ordinarily prudent employer would not have exposed him, there can be no recovery; not because the employer was not negligent, for he was negligent, but because the employee assumed the risk." (*Bradburn v. Wabash. R. Co.,* 134 Mich. 575, 96 N. W. 929 )

Respondent claims that the saw was not guarded.

"It is obviously the duty of an employer, under the principles of this chapter, to cover, fence or guard dangerous machinery or dangerous places in the premises where his employees are required to work or to be, provided this can be done consistently with a reasonably proper and effectual operation of such machinery, or with the proper and effectual conduct of his business." (4 Thompson on Negligence, sec. 4017.)

An employee will not be held to have assumed the extra-hazard of working with unguarded machinery which should have been guarded, under the foregoing rule, unless he knew that ordinary prudence required the guarding of such machinery and was cognizant of the extrahazard incident to its operation without the guard—provided his injury was caused by the absence of a guard.

In this case the respondent denied that there was a guard over the saw and front feed-roller, but his witnesses testified that there was a guard over the same, and he himself testified that the guard was adjustable and raised and lowered with the feed. It was shown that this guard was not one furnished by a standard manufacturer of sawmill machinery, but was a "home-made affair" It was not shown wherein the guard was defective or differed materially in principle from other guards used for the same purpose. Respondent having admitted he knew before the injury that the front feed-roller was loose, the guard, being attached to the roller, did not rest upon the board in front of the feed or as near the board as it would have done if the front feed had been properly adjusted. As we have noted before, the failure to properly adjust the front feed, and the guard which was adjusted with the feed, was contributory negligence on the part of the respondent.

The judgment and order denying appellant's motion for a new trial are reversed. Costs awarded to appellant.

Budge, C. J., and Morgan, J., concur.