(No. 6303. May 28, 1936.)

EDWARD N. GIRANY, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[58 Pac. (2d) 841.]

Geo. H. Smith and H. B. Thompson, for Appellant.

Walter H. Anderson, Gus Carr Anderson, Robert M. Terrell and F. M. Bistline, for Respondent.

MORGAN, J.—This action was commenced by respondent pursuant to U. S. C. A., Title 45, known as the Federal Employers' Liability Law, sec. 51 of which provides: "Every common carrier by railroad while engaged in commerce between any of the several states . . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, . . . . for such injury, . . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, . . . . "

At the time of the accident out of which this litigation arose, appellant was engaged as a common carrier in, and employed respondent in interstate commerce within the meaning of that section. The employment was that of signal maintainer and it was one of respondent's duties to inspect and, when necessary, to repair or replace bond wires, which were attached to the rails, at the joints, in such a way as to connect them and transmit electric current through them, by which the block signal system was operated. The bond wires were attached by channel pins, driven into holes in the rails, and passed under the angle bars (sometimes called fish plates) by means of which the rails were bolted together.

Prior to and at the time of the accident respondent lived at Kimama, a station on appellant's railroad, and it was his duty to inspect the block signal system and keep it in repair for a distance of about 30 miles westward from there. A section crew, whose section extended about 9 miles west from Kimama, also lived there. Appellant furnished a gasoline propelled motor car to respondent and another to the section crew for use by them on its railroad tracks in the performance of their duties.

The morning of the accident respondent and the foreman of the section crew had a conversation shortly after which the crew, including the foreman, started on its car, west from Kimama, to work. A few minutes thereafter respondent started west along the track, on his car, inspecting the bond wires of the signal system. The nature of his work made it necessary for him to, and he did, lie down across the car so that he might see and properly inspect the bond wires and, while doing so, his range of vision along the track was

but a few feet. When some distance out from the station the section crew stopped and unloaded some tools. While this was being done respondent came up and had another conversation with the foreman. Respondent testified the foreman told him, before starting, he was going out about a quarter of a mile and unload some tools and was then going on to the end of his section; that as he (respondent) approached the point where the tools were being unloaded the foreman flagged him down, and he stopped; that the foreman there said "I am going to the west end of my section and let you by" and "I will watch out for you, Eddie." The testimony of the foreman contradicts that of respondent with respect to what was said at Kimama and at the stop to unload the tools. That conflict in the evidence presented a question for the jury. (*Carrey v. Secesh Dredging etc. Co., Inc.,* 55 Ida. 136, 39 Pac. (2d) 772.)

After unloading the tools the foreman and crew continued westward on their car along the track. When they had gone a distance of 500 or 600 feet respondent followed them on his car, continuing the inspection of bond wires. When the car carrying the section crew had proceeded a distance, estimated by the witnesses to be between a quarter of a mile and half a mile, from where the tools had been unloaded, the foreman, who was operating it, stopped it and he and the crew alighted and prepared to remove it from the track, but before the car was removed respondent's car collided with it, resulting in his serious bodily injury.

Respondent testified that, as he proceeded from the point where the tools had been unloaded, he continued to inspect bond wires, as above described, traveling at about 10 or 12 miles an hour, and that the section crew's car usually traveled faster than he was going; that he neither heard nor saw any signal or indication that the section crew had stopped until he saw its car on the track when he was within 10 or 12 feet of it, so close he was unable to avoid the collision; that the section foreman was supposed to send out a flagman when he stopped, but did not do so on that occasion. One of the section men testified respondent was 500 or 600 feet behind the crew's car when it made the stop just prior to the collision.

The trial resulted in a verdict and judgment for plaintiff. Defendant moved for judgment notwithstanding the verdict and, if that be not granted, for a new trial. The motion was denied and the case is here on appeal from the judgment and from the order denying the motion.

 Appellant contends the accident, and injury to respondent, resulted from a risk which he had assumed as a hazard of his employment. The Federal Employers' Liability Law specifies the delinquency which precludes an employer from the defense that injury to his employee was due to a risk he had assumed and for which the employer was, therefore, not liable. U. S. C. A., Title 45, sec. 54, is as follows:

"In any action brought against any common carrier under or by virtue of any of the provisions of this chapter to recover damages for injuries to, or the death of, any of its employees, such employees shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

Our attention has not been called to a statute enacted for the safety of employees, and we know of none, which was violated by the employer. Therefore, we hold the common-law rule of assumed risk to be available to appellant if the facts of this case justify its application. That rule has been frequently considered by this court, as will be found by reference to the following cases: *Goure v. Storey*, 17 Ida. 352, 105 Pac. 794; *Maw v. Coast Lumber Co.*, 19 Ida. 396, 114 Pac. 9; *Knauf v. Dover Lumber Co.*, 20 Ida. 773, 120 Pac. 157; *Shelhaver v. Dover Lumber Co.*, 31 Ida. 218, 169 Pac. 1169; *Kangas v. National Copper Min. Co., Ltd.*, 32 Ida. 602, 187 Pac. 792; *Kinzell v. Chicago etc. Ry. Co.*, 33 Ida. 1, 190 Pac. 255; *Haverland v. Potlatch Lumber Co.*, 34 Ida. 237, 200 Pac. 129; *Bressan v. Herrick*, 35 Ida. 217, 205 Pac. 555; *Schuppenies v. Oregon S. L. R. Co.*, 38 Ida. 672, 225 Pac. 501; *Claris v. Oregon Short Line R. R. Co.*, 54 Ida. 568, 33 Pac. (2d) 348.

In *Goure v. Storey*, above cited, the court said:

"The plaintiff assumed all ordinary risks incident to the work in which he was engaged, and this included all risks

that were obvious and patent or that were open and obvious to one of ordinary understanding."

In *Knauf v. Dover Lumber Co.*, above referred to, this court quoted from the Supreme Court of the United States in *Baltimore & O. R. Co. v. Baugh*, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. ed. 772, as follows:

"Again, a master employing a servant impliedly engages with him that the place in which he is to work and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools and the machinery, than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits the master who provides the place, the tools and the machinery owes a positive duty to his employee in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employee by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty."

In *Kangas v. National Copper Min. Co.*, above referred to, we said:

"The rule that an employee assumes all ordinary and usual risks and perils incident to his employment is based upon a contract, express or implied, that he does so. . . . . In the absence of a contract to the contrary, he does not assume extraordinary or unusual risks, nor will he be presumed to have contracted to hold his employer blameless for injuries resulting from causes of the existence of which he was not aware."

The rule of assumed risk, as understood and applied in this state, does not place on respondent responsibility for the consequences of the negligence of the section crew in blocking the track with its motor car and in failing to warn

him of the danger caused thereby. That was an unnecessary danger, due to negligence, not inherent in the employment; an extraordinary risk, which could not have been foreseen when the contract of employment was entered into, and it was not assumed by the employee. It cannot be said, as a conclusion of law from the evidence, respondent assumed the risk of the collision which occurred while he was in the discharge of duties of his employment which prevented him from keeping an adequate lookout for the obstruction with which he collided, and which it was the duty of other employees of appellant to have removed from the track or to have warned him of. (*Grand Trunk Western R. Co. v. Boylen*, 81 Fed. (2d) 91.)

■ The conflicting evidence as to negligence was submitted to the jury by proper instructions, wherein the law of assumed risk was correctly stated, and the verdict is conclusive. (*Bressan v. Herrick, Schuppenies v. Oregon S. L. R. R. Co., Claris' v. Oregon Short Line R. R. Co.*, heretofore cited, and *Rocco v. Lehigh Valley R. Co.*, 288 U. S. 275, 53 Sup. Ct. 343, 77 L. ed. 743.)

The remaining question to be decided is presented by appellant's assignment of error as to rulings admitting testimony showing the number of members of respondent's family. Respondent, while testifying with respect to attacks he was subject to, which he attributed to the accident, was asked, on direct examination:

"Q. Taking one of the more severe attacks, do you become unconscious in those spells, or not?

"A. I do become unconscious.

"Q. State whether or not in some of the lighter attacks, whether you become unconscious, or not?

"A. Well, some of them, I don't. Sometimes I am at the table, and when the kids begin to look at me I know what is up, and sometimes I go right under, and at times I come out quick.

"Q. You referred to the kids,—what does your family consist of?

"MR. THOMPSON: (of counsel for defendant) I object to that as irrelevant, immaterial and incompetent.

"THE COURT: I think he may answer. . . . .

"A. We have six in the family.

"Q. You mean yourself and wife?

"A. I and my wife and four boys, two are cripples,—

"Q. Never mind that.

"A. —and two are normal. . . . .

"MR. THOMPSON: I move to strike the answers upon the grounds urged in my objection.

"THE COURT: Denied.

JUDGE TERRELL: (of counsel for plaintiff) We consent to that part of the witness' answer going out where he described his children as being crippled, and only ask that there remain in the record the fact he has,—that his family consists of six members, himself, wife and four children.

"MR. THOMPSON: And for my part I insist on either all or none.

"THE COURT: I think I will let the answer stand."

When respondent's wife was on the witness stand she was asked, on direct examination:

"Q. How long have you and Mr. Girany been married?

"A. Twenty-three years.

"Q. And you have a family, I believe of four children?

"A. Yes, sir; four children. . . . .

"MR. THOMPSON: I move the answer to be stricken for the purpose of the objection.

"JUDGE TERRELL: It may go out for that purpose.

"MR. THOMPSON: Yes, and object to the question as incompetent, irrelevant and immaterial.

"JUDGE TERRELL: Merely preliminary, your Honor.

"THE COURT: I think she may answer. Just limit it to the number of children. . . . .

" (Question read by reporter.)

"A. Yes, sir."

We understand the rule in personal injury actions, generally, to be that evidence is not admissible to show plaintiff has others dependent on him and, unless there is something in the pleadings which makes relevant the fact that he has a family, or the number of members of it, evidence thereof is immaterial, and the admission of it for the purpose of exciting the sympathies of the jurors, or otherwise increasing the amount of the verdict in his favor, is erroneous.

■ ■ It is alleged in the complaint and admitted in the answer "that at the time the plaintiff received said injuries by reason of said collision, he was approximately fifty-two years old; was in good health, and was robust and strong physically, and was regularly employed, earning $150.00 per month, besides being furnished a house, rent free, together with necessary coal for fueling purposes and cooking, and ice and water for plaintiff and his family." It is also alleged in the complaint that respondent's injuries, suffered by the accident, are such that he "is rendered incapable and unable to perform any work whatsoever and is wholly and totally and permanently disabled."

A part of the compensation for his labor, prior to his injury, was the use of the house he occupied with his family and the fuel, ice and water which were furnished for their comfort. Testimony showing the number of members of the family living in the house and participating in the use of the coal, water and ice was relevant and material, not on the theory that they were entitled to compensation for respondent's injuries, but as tending to establish what he was capable of earning, and did earn, in addition to his wages paid in money. The money paid him and the accommodations and supplies he received from his employer for himself and family constituted the compensation for his work and established what his earning capacity was prior to his injury. Evidence of amount of earning capacity lost, as a result of the accident, was relevant and material.

■ The only part of the testimony with respect to the family which could have been prejudicial to appellant was the statement, volunteered by respondent, that two of his children were cripples. Counsel for respondent suggested that this portion of the testimony be stricken out and appellant's counsel insisted all testimony respecting the family go out or none of it. Appellant is not in position to complain of the objectionable statement. It is bound by its request that it remain in evidence unless other portions of the testimony, which we find to be relevant and material, be stricken out.

■ ■ No evidence was offered tending to show the ages of respondent's children, or whether either of them was de-

pendent on him. There is conflict in the decisions as to the admissibility and effect of evidence, in personal injury actions, that plaintiff is married and as to the number of his children, where there is nothing in the pleadings which would make such evidence relevant and material. As applicable to such cases we approve the rule announced in *Eoff v. Spokane P. & S. Ry. Co.*, 70 Wash. 270, 126 Pac. 533, reflected in sections 1 and 2 of the syllabus, as follows:

1. "The damages recovered for personal injuries must be confined to the actual injuries suffered by plaintiff, and cannot be augmented by proof that others will suffer because of the injuries.

2. "The action of the court in permitting plaintiff, suing for personal injuries, to testify that he had a family, consisting of a wife and three children, unaccompanied by proof of their financial situation, is not ground for reversal, as enhancing the damages."

The judgment is affirmed. Costs to respondent.

Givens, C. J., and Holden and Ailshie, JJ., concur.

Budge, J., did not participate in the decision.

Petition for rehearing denied.